Marshall, C. J.
 

 The demurrer filed to the amended petition sets forth three grounds: First, that the amended petition and each and every cause failed to state a cause of action; second, that several causes of action were improperly joined; third, that
 
 *333
 
 separate causes of action against several defendants were improperly joined. The conclusions reached in this court make it unnecessary to consider any questions except the sufficiency of the first cause of action. The legal question presented is whether an architect is entitled to a mechanic’s lien for work or labor in preparing plans and specifications and for superintendence of construction of buildings, where the contract is an entire one without allocation of the amount to be received for superintendence separately from the amount to be received for preparing plans and specifications.
 

 It should be stated at the outset that this record does not present, nor has the court considered, the question whether a mechanic’s lien can be obtained for the work or labor of superintending the erection of. a' building. This court will only decide in this cause the right of an architect to recover a mechanic’s lien upon an entire contract for preparing plans and specifications and superintendence, without itemization.
 

 The first essential requisite to that inquiry is to determine whether the Ohio mechanic’s lien statutes are broad enough to authorize a mechanic’s lien for the work and labor of an architect in preparing plans and specifications. The determination of this question involves the interpretation of several Ohio mechanic’s lien statutes, but more particularly Section 8310, General Code.
 

 First of all, the rule of interpretation must be determined. Section 8323-8, General Code, provides: “This act is hereby declared to be a remedial statute and to be construed liberally to secure the beneficial results, intents, and purposes thereof; and a sub
 
 *334
 
 stantial compliance with its several provisions shall be sufficient for the validity of the lien or liens hereinbefore provided for and to give jurisdiction to the court to enforce the same.”
 

 That statute must itself be interpreted to find its true meaning. It is well settled by the common law that any statute creating a right in derogation of the common law must be strictly construed, and it is equally well settled that a remedial statute must be liberally construed for the more effectual furtherance and attainment of its object. Common-law rules of interpretation may, of course, be changed by statute, and it must therefore be determined whether this statute has that effect. This particular statute does not clearly and unequivocally change the common-law rule. It would not be profitable at this time to analyze its provisions, because this court, since its enactment, has made declarations which constitute a guide to its scope and application.
 

 In
 
 Mahoning Park Co.
 
 v.
 
 Warren Home Development Co.,
 
 109 Ohio St., 358, 142 N. E., 883, the first paragraph of the syllabus states: “The character, operation, and extent of a statutory lien must be ascertained from the statute creating and defining it.' Such statute cannot be amended or extended by judicial construction to meet a situation not provided for nor contemplated thereby. The remedy is legislative.”
 

 In
 
 C. C. Constance & Sons
 
 v.
 
 Lay,
 
 122 Ohio St., 468, 172 N. E., 283, it is stated in a
 
 per curiam
 
 opinion: “Our mechanic’s lien law contains the provision that the same shall be liberally construed in so far as it is remedial, but this does not justify the
 
 *335
 
 relinquishment of a mandatory requirement of the law respecting the perfection of a lien. This statute confers an extraordinary right in derogation of the common law, and, though liberality with reference to errors in procedure is permissible, the steps prescribed by statute to perfect such lien must be followed, and in that respect the law is strictly construed and applied. ’ ’
 

 Manifestly, if a strict interpretation is the proper rule in determining whether prescribed steps are conditions precedent, the same rule must be applied in determining whether the terms of the statute are such as to cause a lien to attach. In
 
 Lacy
 
 v.
 
 Piatt Power & Heat Co.,
 
 157 Mich., 544, 122 N. E., 112, 133 Am. St. Rep., 360, and in
 
 Godfrey Lumber Co.
 
 v.
 
 Kline,
 
 167 Mich., 629, 133 N. E., 528, the rule was stated that mechanic’s liens should be strictly construed as to the question whether a lien attaches, but are liberally construed after the lien has been created. This is the general rule, though perhaps not without its exceptions, among the courts of last resort throughout the union, and is certainly in harmony with
 
 C. C. Constance & Sons
 
 v.
 
 Lay, supra,
 
 in interpreting Section 8323-8, General Code. There are a number of earlier decisions of this court declaring that mechanic’s lien statutes are highly remedial in their nature, and therefore to be liberally construed, but an examination of those cases shows that they relate to the remedial and procedural provisions of the statute.
 

 The question in the case at bar is not whether the steps required by the statute have been complied with, because it is conceded that the statute has been strictly followed. The question is whether the char
 
 *336
 
 acter of the service rendered by an architect in preparing plans and specifications is such as to canse a lien to attach after the procedural steps of the statute have been faithfully complied with. On this point the statutes will be strictly construed, and yet avoiding unfriendly strictness and mere technicality. Section 8310, General Code, in its pertinent provisions, is as follows: “Every person who does work or labor upon, or furnishes machinery, material, or fuel, * * * for erecting, altering, repairing, or removing a house, * * # or other building, * * * shall have a lien * * * upon such house * *
 
 *
 
 and upon the interest, leasehold, or otherwise, of the owner, * # * . at the time the work was commenced or materials were begun to be furnished by the contractor, under the original contract * *
 

 It will be seen that a distinction is made between performing work and labor and furnishing machinery, materials and fuel. In the .one case, work and labor must be performed “upon.” The materials may be furnished “for.” It will be presumed that the Legislature in using two prepositions with different meanings in alternative propositions in the same sentence has acted deliberately and with the intent that the different meanings shall be construed in the ordinary sense of the well-defined meanings of those terms respectively. The important inquiry is whether the “work or labor” is to be performed upon the premises, or whether the work or labor may be performed elsewhere in furtherance of the project. In the Century Dictionary “for” is defined: “In the direction of; toward; with a view of reaching. With reference to the needs, purposes or uses
 
 *337
 
 of. Appropriate or adapted to; suitable to the purpose, requirement, character or state of.” By the same authority “upon” is defined: “Up and on; in many cases scarcely more, than a synonym of on.” “On” is defined: “As used of place or positions with regard to the upper and external part of something. In a position above and in contact with.”
 

 If these definitions are adopted and applied, work and labor must be rendered upon the premises, while material need only be suitable to the purpose, requirement and character of the building and necessary to it. Ordinarily, the materials must • enter into the structure to permit a lien, but it may well happen that expensive fabrication of materials may be made without the materials being called for, by reason of change of plans and specifications or the failure to complete a building, and the lien would attach though never entering into the structure. This will serve to illustrate the evident purpose of the Legislature in employing the word “for” concerning materials, and the word “upon” as applying to work and labor.
 

 That the Legislature really intended a distinction is further borne out by the fact that prior to April 18, 1902, the statute in its pertinent parts read: “A person who performs labor, or furnishes machinery or material for constructing,” etc. (Section 3184, Revised Statutes, 89 Ohio Laws, 373). In 1902 the statute was amended to read: “That every person who shall do or perform any work or labor upon or furnishes machinery or material for,” etc. (95 Ohio Laws, 209). By later amendment of April 16, 1913 (103 Ohio Laws, 369), the section was made to read as it still remains, as hereinbefore quoted.
 

 
 *338
 
 We are of the opinion, therefore, that work and labor must be performed upon the structure, or at least upon the premises where the structure is being erected. We would not in this connection be understood as applying this rule in a narrow or technical sense, or to require that a workman or laborer should be at all times upon the premises, as in the instance of one.who hauls materials to the premises, or of an artisan who performs labor upon material belonging to the owner, which material is thereafter incorporated into the building. The work and labor of preparing plans and specifications is usually performed in the office of the architect, far removed from the site of the building, and possibly before a site has been selected.
 

 To extend the limitations of the statute by interpretation to include the services of the architect in preparing plans and specifications would inevitably lead into fields which have never yet been held to authorize a mechanic’s lien. Timber enters into nearly all structures, but no one would contend that the wood chopper in the forest would have a lien, even though employed by the contractor of the building. Other similar situations which might be named are those of the attorney who examines the title to the real estate, or prepares the contract between owner and builder, or the abstractor who prepares the abstract of the title, or the surveyor who determines the true boundaries of the lot and establishes the monuments, or the financier who views the premises and appraises their value with a view to making a loan.
 

 Another rule of interpretation is that a statute must be studied in its relation to other statutes
 
 in pari materia.
 

 
 *339
 
 Any interpretation of Section 8310, which would permit the lien of an architect to attach, must permit that lien to date as of the time when he performed his first labor, which would naturally be some period in advance of the time when the first visible labor is performed upon the building, or upon the lot upon which the building is located. The same section provides that liens shall have no priority among themselves. It would result that all mechanic’s liens of every kind and character would attach as of the date of the first work of the architect. Section 8321-1, General Code, makes provision for construction mortgages, and by the interpretation of that section in
 
 Rider
 
 v.
 
 Crobaugh,
 
 100 Ohio St., 88, 125 N. E., 130, such a mortgage would only have priority over mechanics’ and materialmen’s liens if “filed for record before work was begun or material furnished
 
 on the
 
 improvementTo permit the lien of the architect to attach, and still save construction mortgages from complete wreckage, it would be necessary to reinterpret the section and to modify
 
 Rider
 
 v.
 
 Crobaugh, supra,
 
 to the extent of requiring the mortgage to be filed before the architect should begin work upon plans and specifications. The discussion of the opinion in
 
 Rider
 
 v.
 
 Crobaugh
 
 makes it clear that the purpose of the 15-day interim between the filing of the mortgage and the completion of the loan was to permit the mortgagee to investigate and ascertain
 
 by an inspection of the premises
 
 whether any work had been done or any materials furnished. In drawing the petition, to foreclose the lien of the architect in the instant case, the pleader evidently saw the difficulty of the problem upon this particular point, because nowhere in the petition is the date
 
 *340
 
 stated when the work of preparing plans and specifications began. The prayer does not ask that the lien be established as of any particular date. A lien in favor of the architect would be completely destructive of the purposes of .a construction mortgage, and it would do violence to the mechanic’s lien statutes as a whole to presume that the legislature so intended.
 

 An examination of the cases cited by counsel indicates that the authorities are divided. It is believed that they are not of material aid in determining the true intent and meaning of Section 8310. The statutes of other states differ in phraseology from those of Ohio, and the cases are for the most part based upon the peculiar language and its interpretation. It is true that the Ohio mechanics’ lien laws were originally taken from the Michigan statutes. The Ohio statutes have, however, been generously amended. The case of
 
 Chesnow
 
 v.
 
 Gorelick,
 
 246 Mich., 571, 225 N. W., 4, places an interpretation upon the Michigan statutes which denies a lien to an architect where no other service is rendered, but grants the lien in conjunction with the service of superintending the construction. That case was decided in 1929, which is sixteen years later than the latest amendment of the Ohio statutes. The rule that when a statute is borrowed from another state it is taken with the interpretation theretofore placed upon that statute by the Supreme Court of that state, which is adopted as the true interpretation of the borrowed statute, does not apply. It is only fair to state, however, that counsel only claims that the reasoning of the Michigan decision is convincing.
 

 
 *341
 
 An examination of all the cases cited, and many others not cited, convinces us that there is no weight of authority, and this is admitted in some of the opinions pro and con.
 

 Some of the courts of inferior jurisdiction in this state, as well as the district courts of the United States for the districts of Ohio, have declared in favor of the architect’s lien. We have reached the conclusion that they do not correctly interpret the statute. Much can be said for a mechanic’s lien in favor of an architect, but, if that is to be brought about, it should be by legislative amendment, and not by a strained judicial interpretation.
 

 Having reached the conclusion that an architect is not entitled to a mechanic’s lien solely for services in drawing plans and specifications, separate and apart from superintendence of construction, it only remains to be determined whether a lien will be granted when the preparation of plans, and specifications is in conjunction with the service of superintending construction and as an entire contract. Again, the authorities are divided and it cannot be said that there is any weight of authority either way.
 

 A leading case in favor of a lien on both classes of labor is that of
 
 Chesnow
 
 v.
 
 Gorelick, supra.
 
 In that case the court was evenly divided upon the question whether the architect should have a lien for preparing plans and specifications disconnected with superintendence of the building, but the court was unanimously of the opinion that when an architect prepares plans, and uses them in superintending the construction of a building, the labor of superintendence which is lienable draws to the building the work of preparing the plans, and entitles him to a
 
 *342
 
 lien for the value of both plans and superintendence.
 

 The leading case on the other side is that of
 
 Libbey
 
 v.
 
 Tidden,
 
 192 Mass., 175, 78 N. E., 313, 320, 7 Ann. Cas., 617, where it was declared that “the general rule under our statute is that where there is an entire contract and there is no lien for one part there can be no lien for any part.”
 

 Inasmuch as the allowance of a lien for the entire work of plans, specifications and supervision would under our statutes require that the entire lien should attach upon the beginning of the first work upon the plans and specifications, we are compelled to adopt the Massachusetts rule and to hold that the lien of the architect in the instant case must be denied in its entirety.
 

 The conclusion we have reached makes it unnecessary to determine the demurrer to any of the causes except the first. Upon the first cause of action, the judgment of the Court of Appeals will be reversed and that of the court of common pleas affirmed.
 

 Judgment reversed.
 

 Jones, Matthias, Day, Allen and Robinson, JJ., concur.
 

 Kinkade, J., concurs in the judgment.