Finding no prejudicial error, the judgment is affirmed.

*Judgment affirmed.*

HAMILTON, P. J., and ROSS, J., concur.

THE A. M. LEWIN LUMBER CO., APPELLEE, *v.* HIEATT ET AL., APPELLANTS.

(No. 6122—Decided May 18, 1942.)

*Mr. Leonard H. Freiberg,* for appellee.
*Messrs. Kunkel & Kunkel,* for appellants.

By the Court. This is a trial *de novo* upon an appeal on questions of law and fact from the Court of Common Pleas of Hamilton county, Ohio.

The plaintiff's action is one to foreclose the mechanic's lien of a materialman. The only issue raised is whether the affidavit was filed within 60 days from the date the last material was furnished by it, as required by Section 8314, General Code, and this depends on whether the period of filing should be calculated from August 15, 1940, when an outside cellar door was delivered on the premises.

An analysis and consideration of the evidence reveals that the principal contractor had built another house and this plaintiff had furnished certain material including an outside cellar door that went into its construction. The defendants, Kathleen Hieatt and Cora Bradley, saw this house and liked its main features so much that they concluded that they wanted the general contractor to build a house for them somewhat like it, but with certain modifications. Cora Bradley testified on this subject:

"Q. Your agreement with him in the beginning was to build a duplicate, a reproduction of the Beaver avenue house, isn't that right? A. Yes, sir, except I wasn't to have an outside garage. They do not permit outside garages in the neighborhood in which I live.

"Q. You found that out later? A. No, I knew

that before we moved in. That plan was drawn before we moved in—I mean before we started building."

It was the placing of the garage within the house instead of detached from it, as in the house previously built, that eliminated the outside cellar door.

It is not clear that there was a written contract between the principal contractor and Hieatt and Bradley. No such instrument was introduced in evidence. No witnesses assumed to state the terms of such an instrument.

The plaintiff was represented by one Kahn in negotiating with the principal contractor and in making the contract for the materials to be furnished by the plaintiff. He testified:

"Q. Now, do you recall how Mr. Siefferman approached you on that job? A. Selling the job?

"Q. Yes. A. Yes, I do. There was a duplicate job built on Beaver avenue in Pleasant Ridge, that Mr. Siefferman built, and a real estate man' asked him to build another job like it, and I signed the contract up for the second job, which was on Blue Ridge, for the Misses Hieatt, Bradley.

"Q. That was a duplicate of the plan— A. That was a duplicate of a job built on Beaver avenue. I don't remember the name of the real estate company but this man came over and approached Mr. Siefferman about building another one like it.

"Q. Did you go over that plan for the Hieatt-Bradley job? A. It was the same job, I didn't bother, I just marked it down as a duplicate. * * *

"Q. Now, I will hand you what is marked for identification defendant's identification No. 1, and ask you if you have ever seen that before? A. I have seen plans laying around the job, I imagine this was one of them, but this isn't the plan I took off. The plan I took off, the living room was on the left-hand side and this plan was revised for Mrs. Hieatt.

"Q. So that the living room is on the other side? A. Yes.

"Q. Is that the only change that was made? A. This (indicating) was on the left-hand side instead of the right-hand side. Mr. Siefferman said 'I want to sign the contract now because prices are going up, I will change things as I go along.' But this stair rail was changed."

It seems clear to us from this testimony that the plaintiff must be charged with knowledge that the builder had no definite contract with Hieatt and Bradley at the time it made its contract with him to furnish this material. The most that can be said, is that the builder and the owners had agreed upon the basic type or style of building, but there is no evidence that at that time they had agreed upon plans and specifications.

And the reason for making a contract with this materialman before he had entered into a contract with the owners was clearly stated to the plaintiff's representative at the time—"I want to sign the contract now because prices are going up"—and that he would "change things as I go along," clearly negativing the existence of a contract with the owners requiring all the materials embraced in the plaintiff's contract. We think it is a fair inference that the plaintiff's representative understood that the list of materials in his contract was tentative and subject to change to conform to the requirements of the building as it was in process of construction.

By the terms of the statute (Sections 8310, 8323-9, General Code), the benefit of its provisions is limited to persons who have performed labor or furnished material. The material must be furnished for "constructing, altering, or repairing" of the designated building, and a materialman is defined as including

"All persons by whom any * * * materials * * * are furnished in, or for any construction * * *."

Now, in order to determine whether material was furnished for a particular building, it is necessary to look at the contract between the builder and the owner. If material is delivered that is entirely at variance with any requirement of that contract, it cannot be said that it was furnished for the construction of the building described in that contract. And the burden is on the materialman to ascertain the terms of that contract before delivering the material. The material furnished must conform to that contract. 26 Ohio Jurisprudence, 818, Section 96. If it does not, the builder could not use it without violating his contract with the owner, and his right and all claiming under him is predicated upon performance by him of his contract with the owner by constructing the building according to the contract. 26 Ohio Jurisprudence, 787, Section 60. This outside cellar door was not called for by the contract between the plaintiff and the owners.

This is not a case of change of plans during construction without notice to the materialman. Nor is it a case in which material conforming to the contract between the builder and the owner is delivered on the premises, but not actually used in the construction. The statement in *Clapp Co.* v. *Fox,* 124 Ohio St., 331, at 337, 178 N. E., 586, is, therefore, inapplicable.

We conclude that the plaintiff failed to comply with the statute within the statutory period and, therefore, has no lien.

A decree may be prepared in accordance herewith.

*Decree accordingly.*

MATTHEWS, P. J., and ROSS, J., concur.