KLINE, d. b. a. KLINE ENGINEERING, Plaintiff, v. FEDERAL INSURANCE CO. et, Defendants.

Common Pleas Court, Miami County.

No. 37319. Decided February 25, 1958.

Shaw & Cox, Xenia, for plaintiff.
J. Paul McNamara, Columbus, for defendants.
Fred J. Milligan, Columbus, for Ohio Society for Professional Engineers, Amicus Curiae.

## OPINION

By PORTER, J.

By this action, the plaintiff seeks to recover on a contractor's bond in which Kulka Industrial Corporation is principal and Federal Insurance Company is surety. The petition alleges that on August 31, 1954 the Department of Highways of Ohio awarded a contract to Kulka Industrial Corporation for the improvement of sections of State Routes 48 and 55 in Miami County in accordance with plans and specifications which called for grading, draining, paving with asphaltic concrete and constructing a grade crossing elimination with the New York Central Railroad. Upon being awarded the contract, Kulka Industrial Corporation furnished a bond, with Federal Insurance Company as surety, conditioned for the payment by the contractor of "all lawful claims of subcontractors, material men and laborers for labor performed and materials furnished in carrying forward, performing or completing said contract, said principal and sureties agreeing and assenting that this undertaking shall be for the benefit of any material man or laborer having a just claim, as well as for the obligee."

On October 9, 1954, the plaintiff entered into a written contract with Kulka Industrial Corporation, by which he agreed to furnish all necessary surveying work for the project other than was furnished by the State Highway Department, including grades, elevations, slopes, bridge locations, etc., and excluding any design or detail work on the steel structure. For those services, Kulka Industrial Corporation agreed to pay plaintiff $100 per day (plus expenses) for a complete surveying crew and $60 per day (plus expenses) for consultation or necessary engineering work in plaintiff's office. The plaintiff has attached an account to his petition which shows items of work performed under the contract amounting to $10,049.49. The account also shows payments by Kulka Industrial Corporation aggregating $6,816.54, leaving a balance of $3,232.95 for which plaintiff prays judgment.

Federal Insurance Company has demurred to the petition on ground it does not state a cause of action against Federal Insurance Company as surety on the contractor's bond. The only question raised by the demurrer is whether plaintiff's surveying services, which were rendered under his contract with Kulka Industrial Corporation constituted "labor" as that term is used in §§153.54 to 153.57, inclusive, R. C. Since the contract is divisible, the demurrer must be overruled if any of the items listed in the account, which is attached to plaintiff's petition, constitute "labor" as the term is used in the above statutes.

Sec. 153.54 R. C., provides:

"When public buildings or other public works or improvements are about to be constructed, erected, altered, or repaired under contract, at the expense of the state, or any county, municipal corporation, township, or school district thereof, the board, officer, or agent, contracting on behalf of the state, county, municipal corporation, township, or school district shall require the usual bond as provided for by law with good and sufficient sureties, with an additional obligation for the payment by the contractor, and by all subcontractors, for all labor performed or materials and tools furnished and for the use of and repairs to equipment used in connection with the construction, erection, alteration, or repair of such buildings, works, or improvements."

This is a case of first impression with respect to the meaning of the term "labor" within the purview of the contractor's bond statute. Cases which define "labor" for other purposes are of little assistance, e. g., **Bloom v. Richards, 2 Oh St 387**, which construes the term "labor" as used in the statute prohibiting "common labor" on Sunday. Likewise, contractor's bond statutes vary widely from state to state, so that cases construing statutes of other states are of little aid in construing the Ohio statute. For example, the California statute protects all persons "performing labor upon or bestowing skill or other necessary services" rather than merely "labor." See Myers v. Alta Construct Co., 235 Pac. (2d) 1.

It has been held, however, that there is such an analogy between the contractor's bond statutes and the mechanic's lien statutes (§§1311.02, 1311.03 R. C.), that it is apparent that, in the enactment of the former, the legislature intended to make the sureties upon contractor's bonds liable for such labor and materials furnished for public works or improvements as would be the subject of a mechanics' lien if the property were privately owned. **Royal Indemnity Co. v. Day & Maddock Co., 114 Oh St 58, 150 N. E. 426, 44 A. L. R. 374; Standard Oil Co. v. Detroit Fidelity & S. Co., 24 Oh Ap 237, 157 N. E. 418; Indemnity Ins. Co. v. Portsmouth Ice, Coal & Bldg. Material Co., 35 Oh Ap 476,** 172 N. E. 566, aff'd 172 N. E. 152.

In **Citizens Sav. Bank v. Hocker, 34 Oh Ap 169, 170 N. E. 377,** the court, in construing §2365-1 GC (now §153.54 R. C.), said: ". . . it is at once apparent from even the most casual consideration that the 'additional obligation' therein referred to is the payment by the contractor and all subcontractors for the labor and materials, absolutely, and without limitation or qualification of any nature whatsoever." That statement is too broad, as is shown by **American Guaranty Co. v. Cincinnati Iron & Steel Co., 115 Oh St 626, 155 N. E. 389,** in which the Supreme Court said: "That there is a remote point beyond which recovery will not be allowed on such bonds may, perhaps, be conceded." The court said the test of remoteness was whether the materials in question entered into the erection. As stated in **11 O. Jur. 2d 204, Contractor's Bonds §18,** ". . . . it is not just any kind of work done for a job that will authorize a recovery by the workman from the bondsman. Practical considerations require drawing the line near the job." For a discussion of the analogous doctrine under the mechanics' lien statutes, see **26 O. Jur, 807-808, 812-816, Mechanics' Liens §§81-82, 89-94.**

Of the cases under the mechanics' lien statutes, those involving the lien of an architect are most nearly apposite to the case at bar. An architect is entitled to a lien for supervising construction, but he is not entitled to a lien for drawing plans and specifications. **Robert V. Clapp Co. v. Fox, 124 Oh St 331, 178 N. E. 586; Stark v. McConnell, 22 O. O. 123, 8 O. Supp. 23.**

In Robert V. Clapp v. Fox, supra, the contract provided that the architects were to furnish plans and specifications for dwelling houses and superintend their construction. The architects were to be paid 4% of the cost of the buildings for their services, without allocation of the amount to be paid for superintendence separately from the amount to be paid for preparing plans and specifications. The court held there was no lien for preparing the plans and specifications. Since this was an entire contract and there was no lien for one part, there could be no lien for any part.

In **Stark v. McConnell, 22 O. O. 123, 8 O. Supp. 23,** an architect was to receive 4% of the total construction costs for preparing plans and specifications for a building and 2% of such cost for supervising construction—a total of 6%. It was held that the architect was not entitled to a mechanics' lien for preparing the plans and specifications, but he was entitled to a lien for services rendered in supervising construction, since such services constituted "work" performed on the structure within the mechanics' lien statute and the contract was divisible.

Under a Kentucky statute providing, "all persons who perform labor, or furnish labor . . . for the construction or improvement of any . . . railroad . . . by contract . . . shall have a lien," it was held that a civil engineer who surveyed and laid out the route over which the road was constructed performed labor for its construction, and a civil engineer who supervised the construction of the bridges or the roadbed was within the scope of the act. Central Trust Co. v. Richmond, N. I. & B. R. Co., 54 Fed. 723.

The court's examination of the Ohio cases reveals no basis for excluding a laborer from the benefits of either the mechanics' lien or contractor's bond statutes merely because he is a skilled worker or renders professional services, such as an architect or engineer. In **Robert V. Clapp Co. v. Fox, 124 Oh St 331, 178 N. E. 586,** the laborers, whose services the court said were not lienable, were all workers whose labor was performed off the premises and had only a remote connection with the construction, viz., an architect who prepared plans and specifications, the woodchopper in the forest, an attorney who examined the title to the premises, an abstractor who prepared an abstract, a surveyor who determined the true boundaries of the property, and a financier who appraised the premises for a loan. There is nothing in the opinion which indicates that only manual laborers are entitled to a lien. The case merely holds that the labor must be performed on the premises. The court cautions that the rule should not be applied "in a narrow or technical sense, or to require that a workman or laborer should be at all times upon the premises."

In this case, the account which is attached to plaintiff's petition

## 372

shows that most of the work was done at the site of the highway improvement. Only a small amount was done at plaintiff's office. Where, as the petition in this case alleges, a surveyor renders services on the project which are essential to its construction, the court is of the opinion that he can recover on the "additional obligation" of the contractor's bond.

Accordingly, the demurrer will be overruled.