Herbert, J.
This proceeding was originated under the provisions of Chapter 1313, Revised Code. Although there seems to have been no challenge in the Probate Court by any of the parties as to such procedures in that court and no reference thereto in the journal entry of the Court of Appeals, the majority opinion contains the following:
“In the present case we are not faced with an action to foreclose a mechanic’s lien but in a special proceeding in the Probate Court known as an assignment for benefit of creditors. Even though this is a special statutory action it is comparable in every way to a foreclosure proceedings and the same burden *203 rests upon the parties claiming preference by virtue of a mechanics lien as it would in an action to foreclose a mechanic’s lien brought in the Court of Common Pleas. ’ ’
That issue does not seem to be raised here, but attention is called to Section 1313.32, Revised Code, which provides that the Probate Court shall order the payment of all liens upon property sold for the benefit of creditors out of the proceeds thereof according to priority. Also, Section 1313.20 provides that the probate judge may require the assignor “to attend and submit to an examination on oath as to the disposal of his property, his trade and dealings with others, and his accounts concerning them, as to all debts due or claimed from him.” Due to the assignor’s having left the state in this case, such examination was not held.
Under the provisions of Section 2505.22, Revised Code, assignments of error may be filed on behalf of an appellee, “which shall be passed upon by a reviewing court before a judgment or order is reversed in whole or in part.” Under that statute and Section 2 (B) of Rule II of the rules of this court, appellee the Home-Federal Savings & Loan Association (herein sometimes referred to as appellee) assigns as error in its brief the following:
“The Court of Appeals of Highland County, Ohio, erred as a matter of law in finding that the relationship of debtor-creditor existed between John M. Pence and the King Bros. Lumber Company upon an account. ’ ’
Under this assignment of error the appellee then seeks to raise two “legal questions,” (1) whether or not the conduct between appellant and the assignor, Pence, constituted such a business arrangement as to be construed as the furnishing of material or fuel “for constructing, altering, or erecting a house by virtue of a contract, express or implied, with the owner as that phrase is used in Section 1311.02 of the Revised Code of the state of Ohio and as the same has been so construed by the case law of the state of Ohio,” and (2) whether or not the Court of Appeals “erred in not declaring the fact that wholly incompetent evidence in proof of the alleged account and lien had been admitted into evidence, upon behalf of appellant by the Probate Court thus resulting in the fact that an account *204 was found to exist between John M. Pence and the appellant and the relationship of debtor-creditor.”
Although both will be considered in connection with the appellant’s assignment of error, neither of these questions needs to be considered with respect to appellee’s assignment of error.
Coming to the exact language of appellee’s assignment of error not only do we not find any such specific finding by the Court of Appeals in its journal entry but we do find that it cannot be of any concern to Home Federal Savings & Loan Association whether, as indicated in the majority opinion, the relationship of debtor-creditor existed between Pence and King Brothers upon an account. If King Brothers does not have mechanics’ liens on the real estate involved here then the question of priority can not arise so as to affect appellee. If it does have such liens, they must be established under the provisions of Section 1311.02, Revised Code, which require a debtor-creditor relationship, not just “upon an account” but rather one “by virtue of a contract express or implied” sufficient to support such liens. Appellee’s assignment of error is, therefore, without merit and needs no further separate consideration. See paragraph seven of the syllabus in the case of Parton v. Weilnau, Admx. (1959), 169 Ohio St., 145, 158 N. E. (2d), 719.
The single error assigned by appellant here is pinpointed to paragraph two of the entry of the Court of Appeals {supra), wherein that court found appellant’s liens invalid for the reason that the materials for which the liens were claimed were not furnished by virtue of a contract express or implied as required by Section 1311.02, Revised Code. That section provides in pertinent part, as follows:
“Every person or corporation who * *' * furnishes machinery, material, or fuel * * * for erecting, altering, repairing, or removing a house * * * by virtue of a contract, express or implied, with the owner, part owner, or lessee of any interest in real estate, or his authorized agent * * * has a lien to secure the payment thereof upon * * * such house * * * to the extent of the right, title, and interest of the owner, part owner, or lessee, at the time the * * * materials were begun to be furnished by the contractor, under, the original contract, and also to the extent of any subsequent acquired interest of any such owner, part owner, or lessee.”
*205 Admittedly, there is no evidence of an express contract in writing for the certain specified materials delivered to the two houses under construction.
In the majority opinion accompanying the judgment entry appealed from, we find this language following certain quoted testimony:
“With the exception of the above quotations there is no reference as to any contract, express or implied, existing between John M. Pence and the King Bros. Lumber Co. Inc. to deliver specific material to a specific location for a specific purpose. King Bros. Lumber Go. Inc. does not allege the existence of a contract and it did not introduce into the record any facts showing the existence of a contract, and no facts from which the existence of a contract could bé implied.
“Even the exhibits introduced by King Bros. Lumber Co. Inc. tend to indicate that John M. Pence had an open account rather than a contract as to each of the houses he had under construction.” (Emphasis supplied.)
In the minority opinion it is stated, without contradiction in the majority opinion as to the facts recited and which facts are supported by the record:
“The record discloses that Pence was both the owner and contractor; that Pence ordered the materials from the King Bros. Lumber Co. for the particular purpose of erecting houses on his land; that the materials were delivered and used by Pence in the construction of the houses on the described real estate and that separate accounts were kept for each lot. The record further discloses that the sufficiency of the pleadings was not questioned in the Probate Court and that the claims were presented and the issues were tried as if there was no infirmity of the pleadings. * * *
“It is true that there is no direct evidence of any express contract. This evidence was not available for the reason that the representative of the lumber company who received the orders from Pence had deceased before time of trial and Pence had absconded. But the evidence shows that Pence received the materials and used them in the construction of the houses for his own benefit and knew that King Bros. Lumber Co. expected to be paid. Under these circumstances, an implied ob *206 ligation arose on the part of Pence to pay for the materials that were used in the construction of the houses.”
As to the emphasized portion of the foregoing statement from the majority opinion, the answer by King Brothers to the original petition of the assignee asserts that it has the two mechanics’ liens in issue here, specifying therein the amounts for which each was taken and the date and time of recording of each in the recorder’s office of Highland County and the page of each such recording in the pages of Mechanic’s Lien Record No. 5 in that office. Each lien affidavit was admitted into the record as an exhibit and each recites in part that King Brothers “furnished certain materials in and for constructing a certain house situated on the land hereinafter described, in pursuance of a certain contract, with John M. Pence.”
The record as we have it before us simply does not support but rather refutes the emphasized portion of the majority statement quoted above. As to the statement that there were “no facts from which the existence of a contract could be implied,” the exhibits of appellant’s delivery tickets and ledger sheets on both the “Lynn” and “McFarland” jobs must be considered in connection with the testimony, both as to their admissibility and as to the question of implied contract.
It is unfortunate that the assignor, Pence, had left the state before the hearing and was not available to be examined under the provisions of Section 1313.20, Revised Code, as perhaps his contractual relationship with the appellant here could have been established beyond question at the outset.
As to the admissibility of these exhibits, the evidence taken in the Probate Court discloses that Pence ordered materials of various kinds from the appellant lumber company for the construction of the “Lynn” job over a period from April 30, 1957, to December 26, 1957, and for the construction of the “McFarland” job over a period from July 3, 1957, to January 20, 1958. Examination of the items ordered and delivered on each separate job indicates a steady progress such as usually appears in the sequence of materials ordered for the construction of houses. During this time each order was written up in detail on a separate delivery ticket, numbered, dated and subsequently priced. These delivery tickets were in duplicate, *207 both of which were given to the driver to instruct him where to deliver the materials. The duplicate was left at the job with the materials when delivered and the original was returned to the office, signed by the one receiving the materials in some instances.
The former president of King Brothers having died in the fall of 1957 while the houses were under construction, his successor was unable to testify from personal knowledge as to the original arrangement under which delivery of the lumber and other materials was commenced. Leshy, the president of King Brothers since November 1957, testified that he was in charge of the records of the company and was familiar with the manner in which they were kept and that they were made under his direction and control; that the delivery tickets were kept in a safe, “because that is the only record we have to begin with,” until transposed to invoices and posted to a ledger which was done currently and then stored; and that it was standard procedure to accumulate the invoices until the first of the month when they were billed to the customer in his monthly statement on each job. The ledger sheets also show credits for occasional payments or returns of items.
The majority opinion seems to clearly recognize from these four exhibits of delivery tickets and ledger sheets for each job that a debtor-creditor relationship existed between appellant and Pence, stating, “but this we feel does not satisfy the requirement of Section 1311.02 that the lien exists, ‘by virtue of a contract, express or implied, with the owner, part owner,’ etc.” This is where the minority member differed.
The two interested appellees here objected to the introduction of these exhibits as evidence in the Probate Court, and on appeal to the Court of Appeals each assigned as error their admission by the trial judge.
Although the majority opinion below indicates some criticism of the manner of making some of the entries on these exhibits, the journal entry does not sustain the assignments of error there as to their admission in evidence, and at the conclusion of the majority opinion it is stated:
“In view of our conclusion in the preceeding paragraphs we will say only that the other assigned errors are not well taken.”
*208 Section. 2317.40, Revised Code, provides in part, as follows:
“A record of an act, condition, or event, in so far as relevant, is competent evidence if the custodian * * * testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission.
“This section shall be so interpreted and construed as to effectuate its general purpose to make the law of this state uniform with those states which enact similar legislation.”
This statute was first enacted in 1939 (118 Ohio Laws, 662) as the “Uniform Business Records as Evidence Act,” and under its provisions we hold that the admission of these exhibits into evidence by the Probate Court, under the circumstances surrounding the transactions between the parties, Pence and King Brothers, as testified to, was not error.
Coming then to the question of implied contract, which is where the Court of Appeals divided, we find this statement in the majority opinion:
“There is no doubt in anyone’s mind that one who furnishes material expects to be paid for it, but the mere relationship of debtor and creditor is not sufficient to meet the requirements of a law which may result in the preference of one creditor over another, particularly when an injustice or inequity may follow. This is consistent with the view of the courts of Ohio, that the mechanic’s lien law is to be liberally construed as to procedural steps but is to be strictly construed as to substantive requirements and the lien claimant must comply absolutely therewith. In an action based on a mechanic’s lien, the existence of a valid contract must be proved by the lien claimant. # * *
“In view of what we have said it follows that the Probate Court erred to the prejudice of the Home Building & Loan Association and the Home Federal Savings & Loan Association as the holding is contrary to law. We do not hold that the finding of the Probate Court was against the manifest weight of the evidence.” (Emphasis added.)
It is clear from the foregoing that the majority view was *209 based on its interpretation of law rather than the weight of the evidence. We must, therefore, look to the legal meaning of the phrase in Section 1311.02, Revised Code, “person or corporation who * * * furnishes * * * material * * * for erecting * * * a house * * * by virtue of a contract, express or implied, with the owner.”
In the case of Benes v. United States (1960), 276 F. (2d), 99, the court stated (page 106-107):
“* * * it would appear from the language and general purpose of the statute as construed by the Ohio courts that in order for a mechanic’s lien to arise by virtue of an implied contract, the contract must be implied in fact as distinguished from a contract implied in law. See Seybold v. Pitz, 101 Ohio App., 316, 136 N. E. (2d), 666, 670, and cases cited therein.”
There is no question in the mind of any judge who has considered this case that some kind of a contract existed between Pence and King Brothers. The majority of the Court of Appeals considered this to be a contract only of debtor-creditor relationship “on an open account” rather than one on which a mechanic’s lien could be based, relying mainly upon the authority of Iron Co. v. Murray (1882), 38 Ohio St., 323. Paragraph two of the syllabus in that case holds:
“2. Where no contract is shown except such as is implied from the running of mutual accounts between the parties for many years, with semiannual settlements, a mechanic’s lien cannot be asserted on such accounts, the items of which, generally, were furnished for current repairs upon machinery attached to a rolling-mill, while other items did not relate to repairs of the machinery or building.”
We do not consider that case applicable to the facts of the case before us, as all the material furnished here was for the construction of the houses involved.
In the case of Columbus, Hocking Valley & Toledo Ry. Co. v. Gaffney (1901), 65 Ohio St., 104, 61 N. E., 152 (not involving a mechanic’s lien), the meaning and scope of the term, “implied contract,” was discussed at length in the opinion by Min-shall, O. J., beginning at page 114, part of which we quote:
“But contracts that are true contracts are frequently termed implied contracts, as, where from the facts and eircum *210 stances, a court or jury may fairly infer, as a matter of fact, that a contract existed between the parties, explanatory of the relation existing between them. Such implied contracts are not generically different from express contracts; the difference exists simply in the mode of proof. Express contracts are proved by showing that the terms were expressly agreed on by the parties, whilst in the other case the terms are inferred as a matter of fact from the evidence offered of the circumstances surrounding the parties, making it reasonable that a contract existed between them by tacit understanding. In such cases no fictions are, or can be, indulged. The evidence must satisfy the court and jury, that the parties understood that each sustained to the other a contractual relation; and that by reason of this relation the defendant is indebted to the plaintiff for services performed or for goods sold and delivered.”
In Demann’s Ohio Mechanic’s Lien Law, at page 69, Section 4.2, appears the following:
“The contract under which the labor is performed or the material is furnished may be either express or implied. An implied contract which will support a right of lien must be a contract implied in fact and not a contract implied in law.”
Demann then quotes at length from the Minshall opinion. See, also, 20 Words and Phrases, 357 to 363, citing cases from many jurisdictions distinguishing contracts “implied by law” and those “implied in fact.”
Following declared Ohio principles we hold that, as ,the term is used in Section 1311.02, Revised Code, an implied contract is a contract implied in fact and that such a contract may be proved from the evidence of the circumstances surrounding the transactions between the parties from which the terms may be reasonably inferred.
In the majority opinion of the Court of Appeals reference is made to the case of Choteau, Merle & Sandford v. Thompson & Campbell (1853), 2 Ohio St., 114. The fifth paragraph of the syllabus in that case holds:
“Where materials are furnished from time to time, for a particular purpose, and the dates are so near each other as to constitute one running account, the lien dates from the time when the first article was supplied, although, strictly speaking, *211 the articles were not furnished under one entire contract.”
A brief review of the facts here shows sale and delivery by King Brothers of building materials for the “Lynn” job, beginning with basement sash and form materials and running through a sequence, including lumber, usual in the construction of houses, to final finishing items such as screens, hardware and formica tops, with an unpaid balance due on such materials of $9,756.23. ■
As to the “McFarland” job, the early sale and delivery of materials consisted of items of mortar, drain tile and block, while the final invoice was for a water heater. The unpaid balance there was for building materials in the amount of $6,727.80. The delivery slips and invoices cover a period of eight months in the “Lynn” job and six and one-half months in the “McFarland” job. No mechanics’ liens on either place, except King Brothers’, exceed $800, ail of which were allowed priority over the appellees’ mortgage lien by both the Probate Court and the Court of Appeals.
The trial court and one judge of the Court of Appeals found from these facts and circumstances implied contracts between Kong Brothers and the assignor, Pence, to deliver specific materials to the specific locations (“Lynn” and “McFarland” jobs) for the specific purpose of building the two houses located thereon respectively.
The majority of the Court of Appeals, having found contracts only for furnishing building materials on an open account, concluded as a matter of law that there were no implied contracts within the meaning of Section 1311.02, Bevised Code.
A majority of the court here conclude that a general purpose had been agreed upon between appellant and Pence, the then owner, the owner to order and pay for the materials to be used in building the two houses on the indicated job locations, the appellant to furnish and provide such materials ordered to those locations to be used in building those houses.
In the case of Mid-Co Pipe & Supply Co. v. Central Torpedo Co. (1927), 127 Okla., 273, 260 P., 753, the Supreme Court of Oklahoma held that, where materials are furnished to be used for the same general purpose, though ordered at different times, yet if the separate parts form an entire whole and are *212 so connected as to show that the parties regarded the separate items of material furnished at different times as being a part of the entire account and not constituting separate accounts, the furnishing of said materials in that manner will be considered as a single contract. In the decision it cited and relied on its 1924 decision in the case of Sherbondy v. Tulsa Boiler & Machinery Co. (1924), 99 Okla., 214, 226 P., 564.
The Court of Appeals here also seems to have been concerned with the question of whether the rule of strict construction or liberal construction should be applied in this case, citing the case of C. C. Constance & Sons v. Lay, 122 Ohio St., 468, 172 N. E., 283. In the per curiam opinion in the Constance case is contained the following:
“Our mechanic’s lien law contains the provision that the same shall be liberally construed in so far as it is remedial, but this does not justify the relinquishment of a mandatory requirement of the law respecting the perfection of a lien. This statute confers an extraordinary right in derogation of the common law, and, though liberality with reference to errors in procedure is permissible, the steps prescribed by statute to perfect such lien must be followed, and in that respect the law is strictly construed and applied. Mahoning Park Co. v. Warren Home Development Co., 109 Ohio St., 358, 142 N. E., 883, and cases therein cited.”
Reliance is also placed upon the case of Robert V. Clapp Co. v. Fox (1931), 124 Ohio St., 331, 178 N. E., 586. In that case an architect sought to perfect a lien on property for the preparation of plans and specifications and for superintendence of construction of a building thereon. The court held that Section 8310, General Code (now Section 1311.02, Revised Code), did not provide for a lien in favor of an architect for the preparation of plans and specifications and, because the contract did not allocate the amount to be paid for construction superintendence separately from the amount to be paid for the preparation of plans and specifications, the statute did not authorize a lien for any part of such services. Although we agree with the decision in the Clapp case, we question the necessity of paragraph one of the syllabus in that case, which states
“Mechanics’ lien statutes create rights in derogation of the *213 common law and should therefore be strictly construed as to question whether a lien attaches, but their procedural and remedial provisions should be liberally construed, after the lien has been created.”
The rule stated in 36 Ohio Jurisprudence (2d), 445 and 512, Sections 14 and 68, seems to be taken from this paragraph of the syllabus in the Clapp case and yet it seems by its very statement to raise other questions. When does a lien attach and what remains to be construed liberally after the lien has been created ? Although this distinction between strict and liberal construction seems to have come down over the years, the writer questions its accuracy and applicability today. It is never contended that Section 1311.14, Revised Code, the last sentence of which provides, “this section shall, as to mortgages contemplated by this section, control over all other sections of the Revised Code relating to said mechanic’s, materialmen’s, contractor’s, subcontractor’s, laborer’s, and all liens that can be had under Sections 1311.01 to 1311.68, inclusive, of the Revised Code, and shall be liberally construed in favor of such mortgagees, a substantial compliance by such mortgagees being sufficient,” is in derogation of the common law.
There has been a mechanic’s lien law on the statute books of Ohio in some form or other since 1843 (41 Ohio Laws, 66), but it was not until 1912 that Section 33 of Article II of the Ohio Constitution was adopted, providing:
“Laws may be passed to secure to mechanics, artisans, laborers, subcontractors and materialmen, their just dues by direct lien upon the property, upon which they have bestowed labor or for which they have furnished material. No other provision of the Constitution shall impair or limit this power. ’ ’
The first mechanic’s lien law enacted under this constitutional provision was in 1913 (103 Ohio Laws, 369), Section 22 of that act providing:
“This act is hereby declared to be a remedial statute and to be construed liberally to secure the beneficial results, intents, and purposes thereof; and a substantial compliance with its several provisions shall be sufficient for the validity of the lien or liens hereinbefore provided for and to give jurisdiction to the court to enforce the same.”
*214 The first paragraph of the syllabus in the Clapp case, although not essential to the decision there, seems to be based on the old rule which was stated as follows by Marshall, C. J., in the opinion: “It is well settled by the common law that any statute creating a right in derogation of the common law must be strictly construed, and it is equally well settled that a remedial statute must be liberally construed for the more effectual furtherance and attainment of its object.”
Compare that statement with the case of Bullock v. Horn (1886), 44 Ohio St., 420, 7 N. E., 737, the first paragraph of the syllabus of which states:
“1. The statutes of this state upon the subject of mechanics’ liens, being remedial in their nature, are to be liberally construed in order to carry out the purpose of the Legislature in their enactment.”
In the case of Vernon, Admr., v. Harper (1908), 79 Ohio St., 181, 86 N. E., 882, 20 L. R. A. (N. S.), 44, Spear, J., stated in the opinion:
“The policy of the state with respect to the claims of laborers and materialmen to be compensated for their work and material out of the structure to which their work and material have contributed is indicated by the statute as to hens and has been clearly defined in a number of decisions in this and other courts. The statute should be liberally construed in order to carry out the purpose of the Q-eneral Assembly in its enactment, the legislation being highly remedial in character. This policy is fully elaborated in Bullock v. Horn, 44 Ohio St., 420, and need not be enlarged upon here. ’ ’
The two above-cited cases well antedate Section 33 of Article II of the Ohio Constitution.
Paragraph four of the syllabus in the case of Howk v. Krotzer (1942), 140 Ohio St., 100, 42 N. E. (2d), 640, states:
“A statute which limits the right of a person who does work or labor upon or furnishes material for the construction of an improvement upon real estate to recover the full value of such labor or material is to be strictly construed. ’ ’
At the conclusion of his opinion in that case, Turner, J., stated:
“We think that the spirit, purpose and letter of the con *215 stitutional provision and the mechanic’s lien law authorized thereby call for a strict construction of any provision which limits the right of the lienholder to be paid in full for labor bestowed on or material furnished for an improvement on real estate.” (Emphasis added.)
It would appear from the last time this court has spoken on the question that the rule of strict construction is to be applied to protect the right of the lienholder rather than to limit it.
Applying the tests set out above to the instant case, a majority of the court is of the view that the filing and recording of the mechanics’ liens of appellant here were within the scope of the statute, the affidavits therefor were not attacked as to their form or substance, and sufficient facts were established to the satisfaction of the probate judge to find contracts implied in fact to support the allegations of the affidavits for the liens and their priorities over the liens of the Home Federal Savings & Loan Association and the Home Building & Loan Association, respectively. Paragraph two of the entry of the Court of Appeals having been determined as a matter of law and not on the basis of the weight of the evidence, we, therefore, find it necessary to reverse the judgment of the Court of Appeals with respect to that paragraph and affirm the judgment of the Probate Court as to the priority of appellant’s liens as modified by paragraph one of the entry of the Court of Appeals.

Judgment accordingly.

Weygandt, C. J., Zimmerman and Matthias, JJ., concur.
Taet and 0’Neill, JJ., concur in part.
Bell, J., dissents.