Hitchcock, J.
This is a case of some considerable importance, whether we consider the amount of property in contest, or the principles involved. The amount of property exceeds 1,300 acres of land, which' the complainant claims that he is entitled to, and for which he has paid, or rather originally paid, I17.53J. Having paid this much for the land, he now attempts, in a court of chancery, to force the legal title from the defendants. If there had been, between these partios, a contract of purchase and sale of this land for the same amount of purchase money, had this purchase money been‘paid, and had an application been made in chancery on the part of the vendee to enforce such contract, no court, acting upon the well-known px’ineiples of equity, would hesitate a moment in dismissing the bill, on the ground of inadequacy of consideration. And, upon similar principles, a court of equity would not interfere to relieve a pui’chaser at tax sale, as between him and the owner of the land, except when required to do it in consequence of positive law.
Under the law of January 30, 1822, “ providing for the remission of penalties, and for the sale of land for taxes,” 2 Chase’s L. 1216, it is provided, that a deed made by the county auditor, under that act, “ shall convey to the purchaser all the title, either in law or equity, which the owner had in the lands described in said deed.” This law seemed to contemplate that a purchaser under its provisionsmight acquire an equitable interest in the land so purchased, although he acquired no legal right. And, if the law gave him an equity, it would seem to be the duty of the proper court to enforce this equity. The case of Rennick v. Wallace, 8 Ohio, 539, arose under this law. This case is relied upon as an authority 155] *by the complainant. But, before it can be so considered, *156 it is incumbent upon him to show that the law under which he purchased contains a similar provision. Upon examination, it will be found that it contains no such provision. On the contrary, it enacts that the deed executed by the county auditor “shall convey to the purchaser or purchasers a good title in law and equity to the land or part of town lot so sold.” If the auditor’s deed conveys a good title, both in law and equity, to the purchaser at tax sale, there is no necessity for the interference of a court of equity. There can be no necessity for the interference of this court in the present case; because, if the complainant-has any title, it is such a title as he asks the court to decree to him ; that is, “ a good title in law and equity.”
The complainant charges, it is true, tbat.a'fraud was committed! by the defendants upon his rights, in withdrawing the former entry, and making a re-entry of the same land upon the same warrant, although in a different name. The fact is denied by the answer, but still the circumstances of the case are such as to leave, in my mind, very little, if any, doubt that the real object in all this management was to overreach and avoid the tax sales. And, if such was the object, it was far from being a very worthy one. If the sole design had been to acquire a legal title, this probably might have been secured by a patent upon the original entry and survey. There is certainly not sufficient proof in the case to establish the fact that Bland was dead at the time the entry in his> name was made. But, if a fraud was intended, it could, in reality have no effect upon the complainant, if ho had previously acquired “ a good title in law and equity to the land." It would not defeat such title.
It is foreseen that difficulties may arise between purchasers at tax sales of lands which have been entered and surveyed, but not patented, and the owners of those lands, when subsequently patented. The question must some day bo settled whether the law of the state, which declares that siich purchasers shall have “ a good title in law and equity,” shall govern ; or whether that law, with respect to this class of cases, shall be considered as a dead letter. However it may appear to others, *it seems to me [156 to be a question which will be found to be surrounded by difficulties. And its determination will perhaps depend upon the decision of the question whether the state has the right to tax,any lands within its borders until those lands become the property of *157 individuals, a right which has been exorcised, from the earliest "period of the state government, with respect to all lands except those belonging to the United States, while so held, or for a limited period after the same were sold. If the right to tax exists, and that it does there has not been any serious question for many years at least, it would seem to follow that the right to collect must also exist, although, in making collection, it might become necessary to transfer to a hew proprietor the thing taxed. But, in this case, it is unnecessary to trouble ourselves with this question. When it does arise, it must be a purely legal question, to be settled by a court of law.
There is another view which may be taken of this case, which will show more conclusively, if possible, than the preceding, that the complainant can not have the relief which he seeks, so far as respects a decree for the conveyance of the land. A purchaser at tax sale acquires no title either in law or equity, unless the land has been taxed and the sale conducted according to law. The authority to sell is" construed strictly. The law requires that there should be a pertinent description of the land in the duplicate for taxation and in the advertisement of sale. It should be so described that the owner may know that the tax on his land is unpaid, and that purchasers may know the precise land intended.
In the case before the court, there was an entire survey of 1,333^ acres. Of this survey 485 acres .were charged on the duplicate with taxes as the property of Theodoric Bland, and was so advertised for sale. In what part of the survey was this 485 Acres located? Wo are not informed either by the duplicate or ay the advertisement. It is altogether uncertain. The same remark may be made with respect to the. 846 acres taxed in the dame of Dangerfield. The complainant attempts to avoid this 157] difficulty by assuming that this'defect is cured *by the sale ; alleging that, as both tracts constitute the whole survey, and as both were sold to one person, there can be no difficulty about the location. If, however, there was error in the duplicate and advertisements, that can not be cured by a subsequent sale and purchase. The two parcels must have been sold separately, or the sale would be void, and the case must be decided as it would have been had the sales been made to different individuals. This case is like the case of Laffeity v. Byers, 5 Ohio, 458, in which the sale was held to bo void, and, upon the authority of that case, we hold this sale to be void.
*158 The foregoing remarks apply to the sale of 1829; and the question then arises, whether the complainant acquired any additional right under the sale of 1831. After the sale of 1829, both tracts of land were transferred by the county auditor to the complainant, and upon the duplicate of 1830, the entire entry and survey, consisting of 1,333J acres, was listed to him, and charged with a tax. The complainant, as he insists, took possession of the land and claimed the ownership of it, but he did not pay this tax, nor was it paid by any one else. Again, in 1831, the land was in the same manner placed upon the duplicate, charged with the tax, interest, and penalty of 1830, and the tax of 1831, amounting, in the whole, to $15.50.7. The tax not being paid, the land was isold in conformity with the law, and purchased by an agent of the complainant for his use, and eventually conveyed to him. This purchase must be considered the same as if made by the complainant in person. So far as respects the manner of taxing and advertising, I do not see that any objection can be made to this sale, nor but that the sale would have conferred title had it been made to a stranger. But it was made to the individual in whose name the land was taxed, who had it in possession, and who claimed to be the owner — to the individual who, under the circumstances, was bound to pay the tax, and who did in feet pay it. Why the tax of 1830 was not paid in time; why that, together with the tax of 1831, was not paid without the sale of the land, we know not. If the complainant *was doubtful [158 of the validity of his first purchase, and intended by this course of proceeding to cure a defective title, he certainly does not present a case for equitable interference, especially as the sale was in consequence of his own neglect of duty.
If, by this proceeding, he could be considered as having procured a strictly legal title, the circumstances are such as might induce a court of equity to interpose to divest him of that title at the suit of the former owner of the land. But, in our view, the complainant acquired no additional right by this purchase, and must be held to be in the same situation that he would have been had he paid the taxes before the sale.
The complainant insists, that if not entitled to a decree for the land, he is entitled to a decree for the amount of taxes which he has paid, and that the same shall be held to be a chargo upon the land. This claim is based upon section 42 of the act of March *159 12,1831, prescribing the duties of county auditors. In this section it is provided, “that upon the sale of any land or town lot for delinquent taxes, the lien which the state has thereon for taxes then due shall be transferred to the purchaser at such sale; and if such sale shall prove to be invalid, on account of any irregularity in the proceedings of any officer, having any duty to perform, in relation thereto, the purchaser at such sale shall be entitled to receive from the proprietor of such land or town lot the amount of the taxes, interest, and penalty legally due thereon, at the time of such sale, and the amount of taxes paid thereon by the purchaser subsequent to such sale, and such land or lot shall be bound for the payment thereof.” This is certainly a most equitable provision, and where a purchaser brings himself within its principles, this court would secure to him his rights acquired under it. It was upon this principle that this court, in the case of Nowler v. Coit, 1 Ohio, 519, held that taxes paid by a purchaser shall be refunded, with interest and expense of payment, when the owner of the land comes into equity to disincumber the title. It is equitable, and in such case the principle applies, that he who would -159] have equity must *do equity. But in no case have the taxes been refunded on the application of the purchaser. For such a .case the statute provides.
It will be seen that by the first .clause in the section, all the rights of the state to the land in consequence,of liens for taxes are .vested in the purchaser. In other words, after the state has sold the land for one particular tax and conferred upon the pui’chaser “ a good title-in law and equity,” she shall not be permitted to defeat this title by setting up a lien for a tax accruing previously. Probably without this statute, the same principle would have been sustained by this court. The last clause provides a remedy for the purchaser, where the sale shall prove to bo invalid in consequence of any irregularity committed by an officer of the government. In such case the purchaser is entitled to receive from the owner of the land the amount legally due for taxes at the time of sale, and also such sums of money as he shall have subsequently paid for taxes on the same land, and for the payment of these several sums the land itself is bound. The mode of recovery is not specified, -whether by action or otherwise. Possibly a court of chancery might restrain the rightful owner from taking possession of the land until payment was made.
*160 This law, however, can have no effect in this case. It was not enacted until 1831, long after the first purchase of the complainant. It can not apply to the second purchase, because that purchase is not “invalid in consequence of any irregularity in the proceedings of any officer” of the.government.
The bill will be dismissed at the costs of the complainant.
Bill dismissed.