In re the QUALSTAN CORPORATION,
Debtor.

Jack Conie & Sons Corp. dba Conie
Construction, et al., Plaintiff,

v.

The Qualstan Corporation and
National City Bank NA,
Defendants.

Bankruptcy No. 02–60473.
Adversary No. 02–02450.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Dec. 23, 2003.

Susan L. Rhiel, Columbus, OH, for Defendant, The Qualstan Corporation.

Amelia A. Bower, Columbus, OH, for Defendant, National City Bank NA.

Guy R. Humphrey, Columbus, OH, for Official Committee of Unsecured Creditors.

## MEMORANDUM AND OPINION

DONALD E. CALHOUN, JR., Bankruptcy Judge.

This matter came before the Court upon the Motion for Summary Judgment of National City Bank as to the Lien of Ken Heiberger Paving, Inc. ("NCB"), Motion for Summary Judgment of National City Bank as to the Lien of Jack Conie and Sons Construction DBA Conie Construction Co., Motion for Summary Judgment of National City Bank as to the Lien of Ferguson Enterprises DBA Midwest Pipe and Supply, Motion for Summary Judgment filed by Plaintiff Conie Construction, Motion for Summary Judgment against National City Bank filed by Defendant Ferguson Enterprises, and various responses and replies.

In its various motions for summary judgment, NCB seeks to dismiss Conie Construction's Complaint, which asks the Court to determine the validity, priority, and extent of liens. NCB also seeks to invalidate the mechanics' liens of Ferguson Enterprises. In their combined Summary Judgment Motion, Conie Construction and Heiberger Paving moves the Court for a ruling that its mechanics' liens have priority over NCB's mortgage liens. In its Motion for Summary Judgment, Ferguson Enterprises also moves the Court to determine that its lien has priority over any of NCB's liens.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2).

In their Complaint, Conie and Heiberger state that it has various mechanics' liens on condominium projects called "Gender Park." Conie and Heiberger assert that they remain unpaid for the work done on "Phase III" of the Gender Park project

in the amount of $294,220.85 and $75,611.00 respectively. Conie and Heiberger assert that the mechanics' liens have priority over any mortgage liens that NCB might have. Conie and Heiberger also name Ferguson Enterprises as a defendant in its Complaint along with many other parties. It is not clear what exact relief Conie and Hieberger seek against Ferguson. In its Answer, Ferguson states that it has mechanics' liens that take priority over all liens except those that might arise from taxes owed to Franklin County. NCB, in its Answer, states that Conie, Heiberger, and Ferguson do not have priority and that O.R.C. §§ 5301.232 and 1311.14 give its mortgage liens priority over all of the mechanics' liens.

## I. *FACTS NOT IN DISPUTE*

The parties presented factual summaries in their motions. The parties also placed various evidentiary documents into the record, including affidavits, copies of mortgages, business records, etc. Based upon the Court's review of the factual summaries and the record, the following facts are not disputed:

The Debtor Qualstan Corporation ("Qualstan") is a condominium developer that filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on August 14, 2002. According to uncontradicted affidavits and business records, Qualstan acquired the Gender Park real estate in 1997. On June 24, 1997, Qualstan filed a Notice of Commencement for the Development of the Gender Park Project.

The Plaintiff Conie Construction performed the site preparation and development work for the Gender Park project. Heiberger Paving, as the name indicates, was hired by the Qualstan to pave the streets in the Gender Park project. Ferguson also was hired by the Qualstan to perform construction work. Conie recorded an Affidavit for Mechanics' Lien with the Franklin County Recorder on January 31, 2002. Heiberger recorded an Affidavit for Mechanics' Lien on February 1, 2002. Ferguson also filed a mechanics' lien on February 1, 2002.

Defendant NCB provided a line of credit to the Debtor. On October 31, 1995, NCB filed a mortgage in Franklin County, Ohio. The mortgage, titled "Open–End Mortgage, Assignment of Rents and Security Agreement" (the "1995 Mortgage"), secured a $10,000,000.00 revolving line of credit promissory note. The Gender Park real estate WAS NOT owned by Qualstan in 1995 when this mortgage was recorded. On December 9, 1997, the 1995 Mortgage was modified by the execution of a Mortgage Modification Agreement ("First Modification") between NCB and the Debtor. The First Modification was recorded in Franklin County on December 16, 1997. According to NCB, the First Modification was filed for record **WITHOUT** the legal descriptions attached for Gender Park real estate. The First Modification was subsequently refiled with the legal descriptions on March 16, 1998 (Second Modification). In its brief, NCB states that the projects added to the 1995 Mortgage via the subsequent modifications included the Gender Park project. After the Second Modification, NCB filed various other modifications to the 1995 Mortgage that increased the line of credit and brought in other properties as security.

## II. *SUMMARY JUDGMENT STANDARD OF REVIEW*

Rule 56(c) of the Federal Rules of Civil Procedure, incorporated by Bankruptcy Rule 7056 provides:

[Summary judgment]... shall be rendered forthwith if the pleadings, deposi-

tions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The purpose of a motion for summary judgment is to determine if genuine issues of material fact exist to be tried. *Lashlee v. Sumner,* 570 F.2d 107, 111 (6th Cir. 1978). The party seeking summary judgment bears the initial burden of asserting that the pleadings, depositions, answers to interrogatories, admissions and affidavits establish the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). The burden on the moving party is discharged by a "showing" that there is an absence of evidence to support a nonmoving party's case. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548. Summary judgment will be appropriate if the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. Thus, the ultimate burden of demonstrating the existence of genuine issues of material fact lies with a nonmoving party. The evidence must, however, be viewed in the light most favorable to the nonmoving party. *Lashlee,* 570 F.2d at 110–111.

The fact that the parties have filed cross motions for summary judgment does not change the standards upon which courts must evaluate summary judgment motions. *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991). Courts still must resolve each motion on its own merits drawing all reasonable inferences against the moving party in each instance. *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987). Where genuine issues of material fact remain, neither motion should be granted. *Id.*

## III. *DISCUSSION*

In its motion for summary judgment, NCB relies on three main issues to assert that its mortgage liens have priority over the mechanics' liens of Conie, Heiberger and Ferguson. The first issue raised by NCB is whether, pursuant to O.R.C. § 5301.232, the mechanics' liens are entitled to priority over NCB with regard to the distribution of proceeds from the Qualstan bankruptcy. Additionally, and in the alternative, NCB asserts that under O.R.C. § 1311.14 the lien of a mortgage given to improve real estate or pay off prior encumbrances is prior to all mechanics' liens. Finally, NCB asserts that the mechanics' liens of Conie, Heiberger and Ferguson are defective because proper affidavits were not filed. The mechanics' liens' claimants argue that neither of the mortgage sections apply because the mortgage reflecting the Gender Park project as security for the line of credit was not recorded until after their commencement of work on the projects and because the loan proceeds from NCB were not used by Qualstan in accordance with the mortgage statute. Conie, Heiberger and Ferguson also take exception to NCB's claims that the affidavits to the mechanics' liens were not proper.

### A. O.R.C. § 1311.06

In its summary judgment motions, NCB argues that the mechanics' liens of Conie, Heiberger, and Ferguson are invalid because of defects. First, NCB states that some of the mechanics' liens are invalid because wrong owners or not all individual owners of condominiums were listed in the affidavits. Second, it is contended that

Conie, Heiberger, and Ferguson listed wrong addresses in the affidavits. Third, NCB argues that some of the affidavits list the wrong first and last day of work. Fourth, NCB argues that some of the mechanics' liens state the wrong amount owed.

### 1. Addresses and Owners Issue

 NCB makes the argument "that the mechanics" liens of Conie, Heiberger, and Ferguson are invalid because they did not use the proper legal description. Section 1311.06(A) states that any person who wishes to avail himself of the mechanics' liens statute needs to file and record in an affidavit "a description of the property to be charged with the lien." O.R.C. § 1311.06. Description of property in affidavit for mechanic's liens is sufficient if it permits property to be readily identified. *Delskamp Paint & Glass Co. v. Stotter*, 28 NP (NS) 451 (1931). "A street address is sufficient description of the premises for purposes of mechanics' lien affidavit required by RC § 1311.06 if it would lead an interested party familiar with the locality to identify the property upon an inspection of the site." *Buckeye State Hauling, Inc. v. Troy*, 43 Ohio Misc. 23, 24, 332 N.E.2d 776 (Ohio Ct.Com.Pl.1974). The law is clear that not having the perfect description does not by itself defeat mechanics' liens.

### a. Heiberger's Address Description

 NCB states that "the property described in the lien is 24.272 acres." That acreage corresponds to Gender Park Phase I but does not include Gender Park Phase III. Heiberger contends that the 24.272 acres described in its Affidavit were used as an exhibit to the affidavit and this description was exactly taken from Qualstan's own Notice of Commencement for Gender Park. Heiberger also adds that

NCB conveniently forgets to add that in the first page of its Affidavit Heiberger describes the property upon which improvements were made as:

> Gender Park, 5280 Gender Road, Franklin County, Columbus Ohio.
>
> R21 T11 S13 Deed Number PB64, PG409
>
> Parcel ID # 010–226275–00

As stated above, it is permissible under Ohio law to describe addresses in various ways. *See Grimm Iron Works Co. v. Frederick*, 6 Ohio Supp. 175 (Ohio Com.Pl. 1941). As *Buckeye State Hauling, Inc.*, 43 Ohio Misc. at 24, 332 N.E.2d 776, states, if an address would lead an interested party familiar with the locality to the site, it is generally sufficient. In this case, Heiberger's description tends toward caution and attaches additionally as exhibit a description of the Gender Park project. This description was taken from the Notice of Commencement, which Qualstan itself had filed and provided to another Plaintiff, Conie Sons. The Court denies NCB's motion as to Heiberger's address description because the description is sufficient.

### b. The Address Description of Conie and Ferguson

 NCB argues that the both Conie's and Ferguson's affidavits have not been perfected because they describe the whole Gender Park project-some 50 acres-instead of the limited Phase III, which is the part on which they were working. NCB also argues that the affidavits are invalid because Conie and Ferguson stated as description all 50 acres of Gender Park without listing as owners in the affidavits all individual owners who at that time owned units in Gender Park. Conie states NCB conveniently forget to state that on page one of its Affidavit, it does state that its liens are limited to Phase III. Ferguson argues that it did not by mechanics' lien law and condominium law have to just file

a description of the limited Phase III or state all of the individual owners that owned the condominiums.

■ The Court agrees that NCB misreads the law. First, the description of all 50 acres is sufficient because it would lead parties to the site in question. "The Courts have construed the statutory requirement of a description of the improved property rather liberally. The description will be considered valid if it enables one familiar with the area in which the improved property is located to identify the property." *Ohio Mechanics' and Materialmen's Liens, 3rd Ed.* (2000), § 5–6, O'Rourke. It was also not improper to assert a lien on all 50 acres because "[a] person who provides work and materials for the improvement of one lot of land will have lien rights against not only that lot but also any contiguous lots owned by the party contracting for the improvement that are used for a common purpose with the lot actually improved, even if all of the work or material was provided in or on the lot actually improved." *Id.* at § 2–3.

■ Second, condominium law and mechanics' lien law does not mandate that each individual owners be listed in affidavits in which the contractor is seeking a lien on the common areas. NCB has provided no case authority or statute which mandates such an action. A contractor working on common areas generally has a lien on all of the common areas on which he has worked and individual unit owners take free of the lien.

"Section 5311.13 also places one restriction on the rights of mechanics' lienors. As discussed in more detail elsewhere, mechanics' liens usually relate back, for priority purposes, to a time prior to the filing of an Affidavit of Lien with the county recorder. Persons who take title to the improved property between the time that mechanics' lien first arise, for priority purposes, and the filing of the liens take subject to mechanics' liens. Section 5311.13 provides one exception to that general rule by stating that persons who take title to their individual condominium units prior to the filing of an Affidavit of Lien on the property take **free from the lien,** in spite of the fact that the lien would otherwise relate back to a time prior to their taking title." *Id.* at § 2–16 (emphasis added). Because by operation of law under § 5311.13 individual owners take title free from lien, there is no reason why individual owners would have to be listed when a contractor asserts a lien on a project. NCB's summary judgment motion is denied with regard to the address description issue.

### 2. Conie Affidavit—First and Last Day of Work and Amount Owed

NCB argues that the veracity of the Affidavit is suspect because the date of first work and last work are incorrect along with the amount owed to Conie by Qualstan. NCB states that "[t]he lien shows the date of first work as September 11, 2001. During the deposition of Craig Conie testified that, in fact, Conie first worked on Gender Park Phase 3... in June, 1999.... After that, Conie again worked on GP3 in August, 2001." NCB further states that "[g]etting the date of first work incorrect may, therefore, be a technical error but it does call into question the veracity of the oath taken by Craig Conie when he signed the Affidavit."

NCB also makes the same argument with regard to Conie's date of last work. The bank states, "[t]he lien shows the date of last work as January 4, 2002. On that date, according to the work records supplied by Conie, Conie did some work on the sanitary sewer manholes at GP3... However, there is another document that shows that Conie last performed work on

March 28, 2002... In fact, Conie testified that March 28, 2002 was the last date that Conie actually did work on GP3. Prior to 2002, the last work performed by Conie in 2001 was on November 19, 2001."

Conie states that the dates may not be technically correct but that in itself does not provide cause to argue the veracity to the affidavits. With regard to the first date of work, Conie states that it did work on Phase III in 1999, but they were paid for that work and that work was not the subject of the mechanics' lien. Further, Conie writes that Document # 2462, although dated August 10, was "signed on and relates to work performed on September 10–one (1) day before the first date of work stated in Conie Construction's Affidavit of Lien." Conie also states that the date of last work is correct, even though it did some minor work afterwards. Conie states that when it filed its affidavit, January 4th was the last day of work. They did not in anyway lie in their Affidavit.

■ The Court does not question the veracity of the Conie's Affidavit because there might be some minor discrepancies in the first and last dates of work. As a matter of law, Conie's first day of work does not matter because Conie's first day of work relate's back to the filing of the Notice of Commencement by Qualstan. See O.R.C. § 1311.13(A)(2). Whatever the date of actual first work, the date relates back to the date of the recording of the notice of commencement. NCB has cited no case or statutory authority to invalidate a lien based on a questioning of the date of first work.

■ With respect to the date of last work, there is absolutely no cause to doubt the veracity of the Affidavit. At the time of the filing of the Affidavit, the date of last work was January 4, 2002. The fact that Conie performed some work in March does not change the fact that at the time of

the filing of the Affidavit, January 4th was the last day of work. NCB states that since work was done in March and Conie filed too early, "it's [sic] lien right have now expired." NCB cites no case authority for this proposition.

When one looks at the situation in real world time, it can easily be determined NCB's argument is absolutely meritless. In January, 2002, when Conie filed its lien, two things were clear. First, NCB had pulled its financing-Qualstan had no money to pay contractors. Second, contractors in fact were not getting paid. At that time, contractors had an absolute right to file mechanics' lien against the property of Qualstan on which they made improvements. That is precisely what Conie did in this case. In fact, it would have been unwise for them not to have filed mechanics' liens. Every passing day without filing mechanics' liens might have meant losing priority to one party or another. The fact that Conie performed some work after they filed a mechanics' lien, which they had a right to do, does not and cannot invalidate the lien.

■ NCB also makes a similar argument about the amount owed by Qualstan to Conie. Citing a statement by Conie from his deposition where Mr. Conie states that the amount owed to him is more than what is listed in his affidavit, NCB argues there is no clear record of the exact amount to be owed to Conie. Conie admits that Qualstan owes more than what is listed in its lien, but also under oath at deposition states that every dollar of the amount in the Affidavit of Lien remains owing to Conie.

NCB cites to no authority which would invalidate a lien of asserting a smaller amount than what is actually owed. Conie cites to *Thomas v. Huesman*, 10 Ohio St. 152, 159 (1859), where the Ohio Supreme

Court stated, "[t]he fact of the amount claimed to remain due upon the account being stated at $951.05, when in fact there appears to have been only $891.53, very obviously can be no objection to the goodness of the account to secure a lien for the amount actually due." In *Tucker Constr., Inc. v. Kitchen*, 1995 WL 89431, *3 (Ohio App. 9 Dist.), the Court citing *Huesman* also did not invalidate a lien in which the stated amount was less than the actual amount owed. This Court will not invalidate the lien of Conie or question its veracity because it stated a smaller amount.

Pursuant to the reasoning stated above, the Court determines that there is not cause to invalidate the mechanics' liens of Conie, Heiberger, and Ferguson. Accordingly, the Court denies NCB's summary judgment motion and grants summary judgment motions of Conie, Heiberger, and Ferguson with respect to the issue of the validity of the mechanics' liens.

### B. O.R.C. § 5301.232

The pertinent portion of Ohio Revised Code § 5301.232 states:

(A) Whether or not it secures any other debt or obligation, a mortgage may secure unpaid balances of loan advances made after the mortgage is delivered to the recorder for record, to the extent that the total unpaid loan indebtedness, exclusive of interest thereon, does not exceed the maximum amount of loan indebtedness which the mortgage states may be outstanding at any time. With respect to such unpaid balances, division (B) of this section is applicable if the mortgage states, in substance or effect, that the parties thereto intend that the mortgage shall secure the same, the maximum amount of unpaid loan indebtedness, exclusive of interest thereon, which may be outstanding at any time,

and contains at the beginning thereof the words "OPEN–END MORTGAGE."

(B) A mortgage complying with division (A) of this section and securing unpaid balances of loan advances referred to in such division is a lien on the premises described therein from the time such mortgage is delivered to the recorder for record for the full amount of the total unpaid loan indebtedness, including the unpaid balances of such advances that are made under such mortgage, plus interest thereon, regardless of the time when such advances are made. If such an advance is made after the holder of the mortgage receives written notice of a lien or encumbrance on the mortgaged premises which is subordinate to the lien of the mortgage, and if such holder is not obligated to make such advance at the time such notice is received, then the lien of the mortgage for the unpaid balance of the advance so made is subordinate to such lien or encumbrance. If an advance is made after the holder of the mortgage receives written notice of work or labor performed or to be performed or machinery, material, or fuel furnished or to be furnished for the construction, alteration, repair, improvement, enhancement, or embellishment of any part of the mortgaged premises and if such holder is not obligated to make such advance at the time such notice is received, then the lien of the mortgage for the unpaid balance of the advance so made is subordinate to a valid mechanic's lien for the work or labor actually performed or machinery, material, or fuel actually furnished as specified in such notice.

Ohio Revised Code § 5301.232.

Under O.R.C. 5301.232, "an advance made by the holder of an open-end mortgage has priority over other liens unless the mortgagee (1) has notice of the

other liens and (2) is not obligated to make the advance." *Colonial Mortgage Service v. Southard et al.,* 56 Ohio St.2d 347, 384 N.E.2d 250 (1978). In this case, this Court must determine if NCB's various mortgages and modifications meet all of the requirements of O.R.C. § 5301.232 and if NCB was obligated to make advances in the Gender Park projects pursuant to the various mortgages and modifications.

■ NCB argues that "each of the modifications relates back to the 1995 Mortgage and since this matter turns, in part, on the form and substance of the Mortgage, any decision relating to priorities must start with the terms of the Mortgage.... Because the Mortgage contains the statutory language and advances made are obligatory, NCB is entitled to priority over the... liens." Essentially, NCB is trying to argue that December, 1995 is the date of perfection because all subsequent modifications relate back to the 1995 Mortgage. Conie, Heiberger and Ferguson don't agree with that interpretation and state that NCB's priority only relates to the time of the refiling of the First Modification as opposed to the date of the filing of the Mortgage or the First Modification.

■ This Court agrees with mechanics' lien claimants' interpretation. Section 5301.232(B) states that "[a] mortgage... securing unpaid balances of loan advances... is a lien on the premises **described therein from the time such mortgage is delivered to the recorder for record** ..." O.R.C. § 5301.232(B) [emphasis added]. NCB's 1995 Mortgage was filed in December, 1995. However, NCB did not file any security instrument securing the Gender Park real estate until 1997, and even then NCB failed to record a description of the Gender Park real estate. It was not until March 16, 1998, that NCB filed proper modifications with proper legal descriptions of the Gender Park real estate. The statute is very clear. A mortgage is only a lien when the premises are described therein and recorded. *See French's Inc. v. Dominic Construction, Inc.,* 1995 WL 1100094 (Ohio App. 11 Dist.). This Court finds that NCB did not have proper liens on the Holt Park and Brice Green real estate until March 16, 1998, when it recorded the Second Modification with proper legal description of the Gender Park project.

■ Indeed, this is the only finding this Court can make. It was not until March 16, 1998, that NCB put the world on notice that it was using the Gender Park real estate as security for the money it advanced to the Debtor. Thus, NCB's argument that the date of priority with respect to the three projects should be December, 1995 does not follow logically. Qualstan did not even own the real estate properties in 1995. If the three projects were not even owned by Qualstan in 1995, how could it offer it to NCB as security in 1995? Certainly, the mere filing of a modification years later does not and cannot change the logic that the three projects were not offered as security by the Debtor in the 1995 Mortgage. Plain black-letter law affirms this logic and holding. A mortgagee can take no greater interest in real estate than that of its mortgagor. *Taylor v. Foster's Adm'r,* 22 Ohio St. 255 (1871). NCB's argument is without merit. Qualstan did not even own Gender Park until 1997. NCB could not possibly have a lien on it dating back to 1995.

■ Because NBC did not have a proper lien on the Gender Park project until March 16, 1998, and because NCB did not file the First Modification until December, 1997, which is the first time NCB could have recorded the Gender Park real estate as security, NCB cannot be granted priority over mechanics' liens

of Conie, Heiberger and Ferguson pursuant to § 5301.232. In Ohio, "[w]hen work is done pursuant to a contract with the vendee, mechanics' liens attach... at the time of the commencement of construction..." *Wayne Building & Loan Co. v. Yarborough* (1967), 11 Ohio St.2d 195, 228 N.E.2d 841 (citing O.R.C. §§ 1311.02 and 1311.13). Conie, Heiberger and Ferguson have proven via affidavits and business records, especially the Notice of Commencement, that work commenced on the projects on or before December, 1997. Thus, because the mechanics' liens of Conie, Heiberger, and Ferguson attached before December, 1997 and prior to NCB's mortgage lien, NCB cannot have priority pursuant to § 5301.232.

### C. O.R.C. § 1311.14

NCB also argues that it should be granted summary judgment because the loans granted to the Debtor under the 1995 Mortgage and subsequent modifications were construction loans as defined in § 1311.14. Generally, construction loans under § 1311.14 have priority over mechanics' liens. "R.C. 1311.14, ... directs that mortgages used to finance improvements to real estate and which are otherwise in compliance with the requirements outlined therein, have priority over subsequently filed R.C. 1311.13 liens despite the fact that the mortgage is filed after the commencement of the improvements." *French's Inc. v. Dominic Construction, Inc.,* 1995 WL 1100094 (Ohio App. 11 Dist.) (citing *Yarborough,* 11 Ohio St.2d at 195, 228 N.E.2d 841). Section 1311. 14 states in pertinent part:

> Except as provided in this section, the lien of a mortgage given in whole or in part to improve real estate, or to pay off prior encumbrances thereon, or both, the proceeds of which are actually used in the improvement in the manner contemplated in sections 1311.02 and

1311.03 of the Revised Code, or to pay off prior encumbrances, or both, and which mortgage contains therein the correct name and address of the mortgagee, together with a covenant between the mortgagor and mortgagee authorizing the mortgagee to do all things provided to be done by the mortgagee under this section, shall be prior to all mechanic's, materialmen's, and similar liens and all liens provided for in this chapter that are filed for record after the improvement mortgage is filed for record, to the extent that the proceeds thereof are used and applied for the purposes of and pursuant to this section. Such mortgage is a lien on the premises therein described from the time it is filed for record for the full amount that is ultimately and actually paid out under the mortgage, regardless of the time when the money secured thereby is advanced.

O.R.C. § 1311.14.

In the case *sub judice,* it is undisputed that NCB's mortgage contains the correct name and address of the mortgagee and recites the necessary covenant. Thus, NCB's loan may have priority over the Mechanics' liens of Conie, Ferguson, and Heiberger even though it may have been filed after the commencement of the improvements **if** it otherwise meets with the requirements of § 1311.14.

Another part of § 1311.14 states:

The mortgagee need not pay out any of the mortgage fund for fifteen days after filing the mortgage. At the end of such period, he may refuse to go forward with the loan or to pay out the fund, in which case, if no funds have been advanced, he shall make, execute, and deliver to the mortgagor, or to the county recorder to be recorded, a proper release of the mortgage, **but if the mortgagee elects**

to complete the loan, he shall, in order to obtain the priority set forth in this section, distribute the mortgage fund in the following order:

(A) The mortgagee may at any time pay off the prior encumbrance, or withhold the amount thereof for that purpose.

(B) Out of the residue of the fund, the mortgagee may at any time retain sufficient funds to complete the improvement, according to the original plans, specifications, and contracts, and within the original contract price.

(C) The mortgagee may from time to time pay out on the owner's order, directly to the original contractor or subcontractor, or to the owner himself if he is his own contractor, such sums as the owner certifies to be necessary to meet and pay labor payrolls for the improvement.

(D) The mortgagee shall pay on the order of the owner, the accounts of the materialmen and laborers who have filed with the mortgagee a written notice as provided in this section, the amounts due for labor or work then performed and material then furnished for the improvement; and shall retain out of the mortgage fund such money to become due as is shown by the notice served and shall hold such money, and shall pay on the order of the owner, the amounts due to such persons who have served such notices, if the mortgagee has sufficient money in his hands to do so and also to complete the improvement; but if the mortgagee has funds in his hands insufficient to pay all such laborers and materialmen in full and to complete the improvement, he shall retain sufficient money to complete the improvement and to distribute the balance pro rata among the materialmen and laborers who have filed such notices.

(E) If the owner refuses to issue an order to pay the amount of the notice filed, the mortgagee shall retain the whole amount claimed until the proper amount has been agreed upon or judicially determined, provided that the mortgagee may withhold sufficient funds to complete the improvement.

(F) The mortgagee shall pay out on the owners' order, directly to materialmen or laborers who have performed labor or work or furnished material for the improvement.

(G) The mortgagee shall pay the balance of the mortgage fund after the improvement is completed to the owner, or to whomsoever the owner directs.

**In case the mortgagee pays out the fund otherwise than as provided in this section, then the lien of the mortgage to the extent that the funds had been otherwise paid, is subsequent to liens of original contractors, subcontractors, materialmen, and laborers;** but in no case is such a mortgagee obligated to pay or liable at law for more than the principal of the mortgage.

*Id.* (emphasis added). Essentially, this portion of § 1311.14 states that the only way a construction loan can have priority over mechanics' liens is if the proceeds of the construction loan were distributed in a manner as defined under A through G. *See Barr v. Masterpiece Homes,* 1994 WL 385998 (Ohio App. 8 Dist.). Thus, this Court must make the inquiry whether NCB paid out proceeds of the loan as described in § 1311.14.

According to NCB's Motion and Memorandum, D, E, and G of § 1311.14 are not applicable to its mortgage. This Court must therefore only determine if A,B,C, and F apply. As to Paragraph A, NCB provides its Exhibit 12 and 13 to prove that its construction loan was used to pay off prior encumbrances. Exhibit 12 is an

Affidavit of Robert Winner, who, as stated in Section I above, was the Vice President of National City Bank. In his Affidavit, Mr. Winner states that **in 1995** NCB wired Transohio Title funds to pay off prior mortgages. Exhibit 12, which is an Affidavit of Larry Press, manager of Lawyers Title Insurance Corporation, states the exact same thing as Mr. Winner's Affidavit, that in 1995 NCB paid off some prior encumbrances of Qualstan.

NBC's Exhibits 12 and 13 prove nothing, however, and summary judgment cannot be granted pursuant to Paragraph A of § 1311.14. Neither affidavit states what prior encumbrances were paid off. Further, in its Response, NCB admits that the prior encumbrances that were paid off were not for the Gender Park real estate, it was for other projects. Paragraph A of § 1311.14 is not applicable as the prior encumbrances that were paid off were not for the Gender Park real estate. Qualstan did not even own Gender Park until 1997 and the prior encumbrances that are cited were paid off in 1995. The Court believes that it is only logical and reasonable that the prior encumbrances paid off must be related to the construction project at hand, which in this case is Gender Park. Any other logic would make virtually any loan that pays off a prior encumbrance a construction loan. The Court has not found any case history, nor has NCB provided any authority, that supports NCB's position.

■ To the contrary, the court in *Dominic Construction, Inc.*, 1995 WL 1100094 at *4, states "[t]he legislative history requires that R.C. 1311.14 be read in *prima materia* with R.C. 1311.13, and that the term 'prior encumbrances' employed in R.C. 1311.14 be construed to encompass only those encumbrances which have priority over R.C. 1311.13 liens." The prior encumbrances that the 1995 Mortgage

paid off were certainly not encumbrances which had priority over the mechanics' liens in question in this case. The clear language of the statute also supports the position taken in *Dominic Construction.* The statute states, "the lien of a mortgage given in whole or in part to improve real estate, or to pay off prior encumbrances *thereon* . . . shall be prior to all mechanic's, materialmen's . . ." O.R.C. § 1311.14 (Emphasis added). The "thereon" language in the statute qualifies the language "to improve real estate." With that qualification the clear meaning of the statute is that the prior encumbrance paid off must relate to the real estate which was improved by the construction loan. That is not what happened in this case.

As to Paragraph B, NCB provides Exhibit 11, which is another Affidavit of Mr. Winner, to prove that NCB retained a residue of the loan fund to complete improvements. Although NCB provides the Affidavit of Mr. Winner to show that loan funds were retained by NCB for improvements, there are no statements in the Affidavit to prove anything of the sort. The Affidavit is completely silent on the subject. Summary judgment cannot be granted to NCB because NCB has not proven that it was a construction loan in keeping with Paragraph B of § 1311.14.

NCB also states that Paragraph C applies and it points to Exhibit 11 to show that NCB paid out on the owner's order, directly to the original contractor or subcontractor, or to the owner himself, such sums as the owner certified to be necessary to meet and pay labor payrolls for the improvement. Once again, Exhibit 11, the Affidavit of Mr. Winner, is silent on the subject, with the only relevant portions stating:

National City Bank loaned money to the Qualstan Corporation for the construction and improvement of various single

family and residential condominium projects. National City had Master Appraisals completed for each project in order to determine the probable amount that any unit or home would sell for. The improvements funded by National City Bank for Qualstan resulted in sale price meeting or exceeding the Master Appraisal amounts for the Holt Park and Gender Park projects as well as other Qualstan projects.

Certainly, this statement by itself does not prove that NCB paid out sums Qualstan certified to be necessary to meet and pay labor payrolls for the improvement.

Finally, NCB also points to Exhibit 11 and the same statements of Mr. Winner to prove Paragraph D applies. Paragraph D references funds paid out by mortgagee directly to materialmen and laborers for improvement. NCB certainly has not proven from Mr. Winner's Affidavit that materialmen and laborers were paid directly by NCB for improvements. Because NCB has not proven that it has met the requirements of § 1311.14, it cannot be granted summary judgment. No evidence has been produced by NCB which would prove that its loan was distributed in a manner as described in Paragraphs A through G of § 1311.14.

In order to be granted summary judgment, NCB also must show that the loans it granted were directly used for the purposes described in this section, which it has not. The statute states that a "lien of a mortgage given in whole or in part to improve real estate, or to pay off prior encumbrances thereon, or both, **the proceeds of which are actually used in such improvement** . . . shall be prior to all mechanic's, materialmen's, and similar liens . . . to the extent that the proceeds thereof are used and applied for the purposes of and pursuant to this section." O.R.C. § 1311.14 (emphasis added). The statute

clearly states that the lien only has priority over mechanics' liens only to the extent that the proceeds are used and applied for the purposes of the construction loan section. NCB must thus prove how much of its line of credit was used for the Gender Park Phase III project in order for that amount to come under the protection of § 1311.14. In its Response, NCB states that in the Gender Park Phase III project, Qualstan spent around $250,000 from the NCB line of credit. NCB provides various statements from Qualstan to NCB, which show draws made to contractors, amongst others. However, NCB must show exactly how much of the line of credit to Qualstan was used for "construction loan" purposes. This burden NCB has not fulfilled. NCB's summary judgment motions pursuant to § 1311.14 are thus denied.

IT IS SO ORDERED.