[Cite as *Zara Constr., Inc. v. Belcastro*, 2022-Ohio-788.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| ZARA CONSTRUCTION, INC., | : | | JUDGES: |
| | : | | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellant | : | | Hon. Patricia A. Delaney, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| SCOTT BELCASTRO, et al., | : | | Case No. 2021 CA 0039 |
| | : | | |
| Defendants - Appellees | : | | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Richland County
                            Court of Common Pleas, Case No.
                            2019 CV 0537 R



JUDGMENT:                   Reversed and Remanded



DATE OF JUDGMENT:           March 16, 2022



APPEARANCES:

For Plaintiff-Appellant                 For Defendants-Appellees

THOMAS L. ROSENDBERG                    J. THOMAS NOCAR
Roetzel & Andress LPA                   JAMES A. KING
41 S. High Street, 21st Floore          Porter, Wright, Morris & Arthur LLP
Columbus, Ohio 43215                    41 S. High Street, 29th Floor
                                        Columbus, Ohio 43215
BRIAN D. BREMER
Roetzel & Andress LPA
222 S. Main Street, Ste. 400
Akron, Ohio 44308

*Baldwin, J.*

**{¶1}** Zara Construction, Inc. is appealing the Richland County Court of Common Pleas decision granting appellees' motion for directed verdict regarding Zara's complaint to foreclose a mechanic's lien and its claim for relief in quantum meruit or unjust enrichment. Appellees are Scott and Christine Belcastro.

## STATEMENT OF FACTS AND THE CASE

**{¶2}** Zara Construction, Inc. was started by Joseph Zara in 1992 as a general contracting business, primarily focusing on home construction, but also performing some light commercial work.  Zara agreed to build a home designed by Scott and Christine Belcastro. The Belcastros provided plans for the home and, after multiple discussions the Belcastros agreed to have Zara complete some of the work. The Belcastros chose to serve as their own general contractor for several steps of the construction to reduce their costs. Parts of the project, including labor and materials for the footers and foundation, interior post and beam features and the spiral stair case, were completed by persons working under the supervision of the Belcastros.

**{¶3}** Zara drafted the contract and delivered it to the Belcastros for review on or before December 29, 2017.  The Belcastros reviewed the contract and requested changes before it was signed on February 15, 2018.

**{¶4}** Zara hired Stephen Marek to supervise a portion of the Belcastro project Zara was to complete and, at some point, the Belcastros hired Marek to perform work outside the parameters of the Zara Contract.

**{¶5}** Zara met with the Belcastros on several occasions to discuss the progress of the construction, work completed by the other contractors and change orders. The

meetings became contentious and the relationship between the parties deteriorated. Zara and the Belcastros held each other responsible for delays and increased costs. Zara claimed that the project was delayed as a result of the use of multiple contractors and the Belcastros practice of reconsidering the plans in the midst of construction. The Belcastros delayed the installation of roofing while they considered a solar power system, but decided against that option due to the expense. Belcastros requested installation of floor drains in the garage, but Zara argued that they were not in the original plans and that a change order must be approved prior to their installation. Zara claimed that timbers installed by a third-party were not properly dried and caused delay in installation of drywall.

{¶6} The Belcastros were frustrated by their perception that they were misled about the cost of the home. They also considered Zara unresponsive to requests for information regarding change orders. Discussions regarding the direction of the project, arguments regarding what was required by the contract and the need for change orders grew heated during construction. The disagreements grew strident, and, in April 2019 the Belcastros issued a notice of termination.

{¶7} On April 2, 2019 the Belcastros delivered a letter to Zara claiming that Zara had defaulted and that the default must be cured within seven days. Zara did not respond and, on April 9, 2019 the Belcastros sent notice that the contract was terminated. Zara did no further work on the Belcastro home and the Belcastros completed the home with the help of other contractors.

{¶8} On May 6, 2019 Zara recorded an Affidavit of Lien stating that it had provided labor and materials for construction of the Belcastros' home, that the last date

of work was April 9, 2019 and that Zara was owed $147,405.58 over and above all credits and set-offs. (Plaintiff's Exhibit 4.)   On June 20, 2019, Zara filed a second lien, identical to the first except for the following: "Zara Construction is currently owed the sum of $114,632.30 over and above all credits and set-offs for the work or materials described in Paragraph 2 above. This Amended Affidavit of Lien replaces the Affidavit of Lien filed with the County Recorder on May 6, 2019 for a different amount." (Plaintiff's Exhibit 5.)

**{¶9}**   On July 23, 2019 Zara filed a complaint to foreclose the mechanic's lien and included counts seeking compensation based upon theories of quantum meruit and unjust enrichment. On August 28, 2019, the Belcastros filed an answer and counterclaim containing allegations of breach of contract, slander of title, breach of bailment/conversion, unjust enrichment, negligence and a request for declaratory judgment. Zara filed its Reply to the counterclaim on September 12, 2019 and the matter was set for a jury trial.

**{¶10}** The Belcastros moved for summary judgment on their claim that they were entitled to a declaratory judgment that Zara had violated the Home Construction Service Suppliers Act. (Counterclaim, Count II).  The trial court granted that motion, found that Zara had committed several violations of the Act and ordered that damages would be determined at a hearing.  Zara also moved for summary judgment regarding the Belcastros' claims for negligence and unjust enrichment, but that motion was denied.

**{¶11}** The parties presented volumes of testimony and exhibits during a seven day jury trial, but Zara's appeal involves a limited amount of the evidence that addressed the validity of the mechanic's lien and whether the facts support a claim for quantum meruit or unjust enrichment.

**MECHANIC'S LIEN**

**{¶12}** The dispute regarding the mechanic's lien arose from Zara's admission that the amount listed in the lien filed on May 6, 2019 was incorrect. Joseph Zara confirmed that "we put numbers from different things into that lien that shouldn't have been on there by accident." (Trial Transcript, p. 72, lines 19-20). He confirmed that the correct amount of the lien was described in Exhibit 5, the amended lien, filed on June 20, 2019.

**{¶13}** The parties also disputed the date of the last date of work toward completion of the Belcastro home. Joseph Zara's affidavit listed the last day of work as April 9, 2019, though during the trial he could not recall "what is the last day we were on the job" in response to questions about working on the site. (Trial Transcript, p. 311, line 15). Zara did confirm that he was still working toward fulfilling the contract and finishing the home until termination on April 9, 2019. (Trial Transcript, p. 348, line 16 to p. 349, line 2). Stephen Marek, the project manager, confirmed that Zara was still soliciting contractor bids in furtherance of the project until April 9, 2019. (Trial Transcript, p. 479, lines 2-8).

**QUANTUM MERUIT/UNJUST ENRICHMENT**

**{¶14}** Zara claimed that it completed work prior to termination but had not received payment for those efforts. The Belcastros contended that no payment was due.

**{¶15}** Payment for work completed was divided into four stages by the contract: "1/4 at Contract Initiation, 1/4 at Framing Dry In, 1/4 at Finished Drywall, 1/4 at Finish Final with Final Approved Inspection Occupancy Permit Issuance." (Defendant's Exhibit A, p. 1, paragraph two). The first two payments had been made and Zara was prepared to install the drywall when the Belcastros issued the notice of termination. Zara was

prevented from completing the drywall, but had completed "things behind the walls" that must be finished before drywall is installed such as "electrical rough-in, plumbing rough-in, heating rough-in." (Trial Transcript, p. 67, lines 1-9). An invoice for progress payment would have presumably included the charges for this work, but, because the Belcastros terminated the contract, the drywall was not installed and no invoice was issued. Zara was not paid for any of the work or materials completed after the second progress payment.

**{¶16}** The Belcastros contended that because the contract was terminated prior to Zara completing the third benchmark for payment and issuing an invoice, they had no obligation to make payment to Zara pending completion of the home pursuant to paragraph 14(b) of the contract. The Belcastros did send the notices described in paragraph 14(b), first giving Zara notice that the Belcastros believed that Zara had defaulted and that they had seven days to cure the default and, when Zara did not respond to the letter, the Belcastros sent a second letter notifying them that the contract was terminated. Relying on paragraph 14(b), the Belcastros then hired others to complete the home and, because they contend they paid out more than the unpaid balance owed to Zara under the written contract, they claimed that they were entitled to compensation.

### DIRECTED VERDICT

**{¶17}** The Belcastros moved for a directed verdict regarding Zara's claims at the close of Zara's case, claiming that the lien was invalid as the amount was incorrect and no payment was due. They also claimed that Zara's claim for quantum meruit or unjust enrichment must fail because paragraph 14(b) of the contract applied, and that recovery

under the theories of quantum meruit or unjust enrichment is not available if an express contract provision applies.

{¶18} The trial court granted the request for directed verdict. With regard to the mechanic's lien, the trial court found that "the attestation that Plaintiff's claims in the original affidavit were being brought "Pursuant to the contract" with the Defendant homeowners to be false, and the affidavit to be defective for that reason." The trial court also found that "[p]laintiff's attempt to amend its affidavit to state a revised amount due of $114,632.30 is prima facie evidence that affiant knowingly attested to an incorrect amount in its original affidavit, thus rendering it invalid," and that Zara had failed to prove, by a preponderance of the evidence, that the last day of work was April 9, 2019. (Judgment Entry, p. 5, 6). With regard to the claim for unjust enrichment or quantum meruit, trial court found that paragraph 14(b) applied and that any amount due Zara would be calculated pursuant to that provision of the contract. The trial court concluded that because this express provision of the contract applied, Zara was prevented from pursuing a claim for unjust enrichment or quantum meruit.

{¶19} The directed verdict disposed of Zara's claims, but Belcastros counterclaim remained for the consideration of the jury. The Belcastros presented their case and, at the conclusion of the evidence, dismissed all but the slander of title and breach of contract claim. The jury was also asked to assess what damages, if any, the Belcastros suffered as a result of the violations of the HCSSA established prior to trial as a result of summary judgment.

{¶20} The jury returned verdicts in favor of Zara on all counts, specifically finding in response to jury interrogatories that Zara did not breach the contract, that Zara did not

commit slander of title and that the Belcastros were not entitled to damages for violation of the HCSSA.

**{¶21}** Zara appealed and submitted two assignments of error:

**{¶22}** "I. THE TRIAL COURT IMPROPERLY ENTERED A DIRECTED VERDICT IN FAVOR OF DEFENDANTS-APPELLEES SCOTT AND CHRISTINE BELCASTRO ON ZARA CONSTRUCTION'S FORECLOSURE ON A MECHANIC'S LIEN CLAIM."

**{¶23}** "II. THE TRIAL COURT IMPROPERLY GRANTED A DIRECTED VERDICT TO DEFENDANTS-APPELLEES SCOTT AND CHRISTINE BELCASTRO ON THE CLAIMS OF UNJUST ENRICHMENT AND QUANTUM MERUIT IN THE COMPLAINT OF PLAINTIFF-APPELLANT ZARA CONSTRUCTION INC."

## STANDARD OF REVIEW

**{¶24}** "A motion for directed verdict raises a question of law because it examines the materiality of the evidence, as opposed to the conclusions to be drawn from the evidence." *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 69, 430 N.E.2d 935 (1982). Thus, we review a trial court's ruling on a motion for directed verdict de novo. Goodyear *Tire & Rubber Co. v. Aetna Cas. & Sur. Co., 95* Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 4.

**{¶25}** Under Civ.R. 50(A)(4), a motion for directed verdict can only be granted when, having construed the evidence most strongly in favor of the nonmoving party, the court concludes that reasonable minds could only reach one conclusion upon the evidence submitted and that conclusion is adverse to the nonmoving party. Conversely, the motion must be denied when there is substantial competent evidence supporting the position of the nonmoving party and reasonable minds might reach different conclusions.

*Hawkins v. Ivy,* 50 Ohio St.2d 114, 115, 363 N.E.2d 367 (1977). "The 'reasonable minds' test mandated by Civ.R. 50(A)(4) requires the court to discern only whether there exists evidence of substantive probative value that favors the position of the nonmoving party." *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 3. The nonmoving party "is entitled to have the trial court construe the evidence in support of its claim as truthful, giving it its most favorable interpretation, as well as having the benefit of all reasonable inferences drawn from that evidence." *Gibson v. Drainage Prods., Inc.*, 95 Ohio St.3d 171, 2002-Ohio-2008, 766 N.E.2d 982, ¶ 21, quoting *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 68, 430 N.E.2d 935 (1982). *Accord Hargrove v. Tanner,* 66 Ohio App.3d 693, 695, 586 N.E.2d 141 (9th Dist. 1990). However, neither the weight of the evidence or the credibility of the witnesses are matters for the court's consideration under Civ.R. 50(A). *Wagner v. Roche Laboratories,* 77 Ohio St.3d 116, 119, 671 N.E.2d 252 (1996), quoting *Ruta* at 68-69, 430 N.E.2d 935.

**MECHANIC'S LIEN**

**{¶26}** In its first assignment of error, Zara contends that the trial court improperly entered a directed verdict in favor of the Belcastros on Zara's claim for foreclosure on its mechanic's lien. The trial court granted the motion for directed verdict after finding that the mechanic's lien was invalid for three reasons: Zara's reference to the contract as the source of the lien was false; Zara's attempt "to amend its affidavit to state a revised amount due of $114,632.30 is prima facie evidence that affiant knowingly attested to an incorrect amount in its original affidavit;" and  Zara "failed to meet its burden of proof by

a preponderance of the evidence that the last day of work performed on the Belcastro home was April 9, 2019." (Judgment Entry, pp. 5-6).

## 1311.06 INTERPRETATION

**{¶27}** Our analysis of this assignment of error begins with a review of the requirements of R.C. 1311.06. The relevant language of that section describes the required content of a mechanic's lien and the deadline for filing it with the county recorder in the county in which the improved property is located:

> Any person, or the person's agent, who wishes to avail self (sic) of sections 1311.01 to 1311.22 of the Revised Code, shall make and file for record in the office of the county recorder in the counties in which the improved property is located, an affidavit showing the amount due over and above all legal setoffs, a description of the property to be charged with the lien, the name and address of the person to or for whom the labor or work was performed or material was furnished, the name of the owner, part owner, or lessee, if known, the name and address of the lien claimant, and the first and last dates that the lien claimant performed any labor or work or furnished any material to the improvement giving rise to the claimant's lien.
>
> * * *
>
> The affidavit shall be filed within one of the following periods:
>
> If the lien arises in connection with a one- or two-family dwelling or in connection with a residential unit of condominium property as defined in Chapter 5311. of the Revised Code, within sixty days from the date on which

the last labor or work was performed or material was furnished by the person claiming the lien * * *

**{¶28}** The matter before us involves a single family dwelling, so Zara was obligated to file an affidavit within sixty days from the last date on which it performed labor or work or furnished material.

**{¶29}** Revised Code 1311.06, on its face, provides direct instruction regarding the content and filing of a valid mechanic's lien. The relevant caselaw and Revised Code regarding whether strict or substantial compliance with R.C. 1311.06 is required to create a valid mechanic's lien that attaches to the subject property is far less clear.

**{¶30}** Revised Code 1311.22, captioned "Liberal Construction" states that substantial compliance with the elements of 1311.06 is sufficient for the validity of the lien:

> Sections 1311.01 to 1311.22 of the Revised Code are to be construed liberally to secure the beneficial results, intents, and purposes thereof; and a substantial compliance with those sections is sufficient for the validity of the liens under those sections, provided for and to give jurisdiction to the court to enforce the same.

**{¶31}** A version of this statute has been in effect since 1917 as noted by *Park v. Williamson Heater Co.*, 28 Ohio Dec. 141, 149 (Ohio Com.Pl.1917), *aff'd,* (1st Dist. Hamilton May 20, 1918):

Section 8323-8 G. C. provides as follows:

"This act is hereby declared to be a remedial statute and to be construed liberally to secure the beneficial result, intent, and purposes thereof; and a

substantial compliance with its several provisions shall be sufficient for the

validity of the lien or liens hereinbefore provided for and to give jurisdiction

to the court to enforce the same."

**{¶32}** Further suggesting a liberal application of R.C. 1311.06, Chapter 1311 has

been deemed remedial: "The mechanics' lien statutes are remedial legislation, designed

to protect the wage earner, furnisher of materials, and contractor whose work, goods, and

skill create the structures to which the lien in part attaches." *Wayne Bldg. & Loan Co. of*

*Wooster v. Yarborough,* 11 Ohio St.2d 195, 217–18, 228 N.E.2d 841 (1967). The

legislature has acted to insure that remedial statutes are construed liberally:

Remedial laws and all proceedings under them shall be liberally

construed in order to promote their object and assist the parties in obtaining

justice. The rule of the common law that statutes in derogation of the

common law must be strictly construed has no application to remedial laws;

but this section does not require a liberal construction of laws affecting

personal liberty, relating to amercement, or of a penal nature.

R.C. 1.11.

**{¶33}** While this caselaw and Revised Code language suggests a liberal

interpretation of R.C. 1311.06 where substantial compliance with the Code is sufficient to

establish the validity of a mechanic's lien, the Supreme Court of Ohio's decisions mandate

a different conclusion:

Notwithstanding the statutory provision for liberal construction of the

mechanics lien law the Supreme Court of Ohio held that these statutes were

in derogation of common law and must be strictly construed with respect to

compliance with the statutory steps to obtain the lien and liberally construed after the lien attached. *Robert V. Clapp Co. v. Fox*, 124 Ohio St. 331, 178 N.E. 586; *C. C. Constance & Sons v. Lay*, 122 Ohio St. 468, 172 N.E. 283. In *Miller v. Kyle,* 85 Ohio St. 186, 193, 97 N.E. 372, the Supreme Court, in construing the Negotiable Instruments Act, said 'That statutes in derogation of the common law shall not by construction receive a meaning beyond that of the terms which they employ.' *Id.* 195, 97 N.E. 373."

*In re Summit Hardware, Inc.*, 302 F.2d 397, 401 (6th Cir.1962).

**{¶34}** The strict construction requirement was reaffirmed the Supreme Court of Ohio in C.*C. Constance & Sons v. Lay*, 122 Ohio St. 468, 469, 172 N.E. 283, 283–84 (1930) and *Robert V. Clapp Co. v. Fox,* 124 Ohio St. 331, 333–35, 178 N.E. 586, 587–88, 10 Ohio Law Abs. 701 (1931) and it is regularly revisited, but still creates confusion:

This issue has been repeatedly addressed by the Ohio Courts, however, the law is still a bit vague. The principal question that has plagued the courts is whether the mechanics lien statutes are to be treated as remedial and therefore are to be construed liberally, or whether they are to be strictly construed as being in derogation of the common law. (See discussion 36 Ohio Jurisprudence 2d Mechanics' Liens s 14.) The Supreme Court of Ohio indicates that neither of these broad rules is satisfactory, for the statutes must be strictly construed in some respects and liberally construed in others. Furthermore, this Court must follow the construction given by the Supreme Court of Ohio in determining the validity of the mechanic's lien in question.

*In re Johnson, Inc.*, 19 B.R. 706, 707 (Bankr. N.D. Ohio 1982) *on reconsideration*, 21 B.R. 90 (Bankr. N.D. Ohio 1982).

**{¶35}** Justice Herbert questioned the accuracy and applicability of the strict/liberal interpretation dichotomy in *Gebhart v. United States*, 172 Ohio St. 200, 212–15, 174 N.E.2d 615, 623–24 (1961):

Although we agree with the decision in the Clapp case, we question the necessity of paragraph one of the syllabus in that case, which states:

'Mechanics' lien statutes create rights in derogation of the *213 common law and should therefore be strictly construed as to question (sic) whether a lien attaches, but their procedural and remedial provisions should be liberally construed, after the lien has been created.'

The rule stated in 36 Ohio Jurisprudence (2d), 445 and 512, Sections 14 and 68, seems to be taken from this paragraph of the syllabus in the Clapp case and yet it seems by its very statement to raise other questions. When does a lien attach and what remains to be construed liberally after the lien has been created? Although this distinction between strict and liberal construction seems to have come down over the years, the writer questions its accuracy and applicability today. It is never contended that Section 1311.14, Revised Code, the last sentence of which provides, 'this section shall, as to mortgages contemplated by this section, control over all other sections of the Revised Code relating to said mechanic's, materialmen's, contractor's, subcontractor's, laborer's, and all liens that can be had under sections 1311.01 to 1311.68, inclusive, of the Revised Code,

and shall be liberally construed in favor of such mortgagees, a substantial compliance by such mortgagees being sufficient,' is in derogation of the common law.

**{¶36}** In 1993, the Supreme Court of Ohio reaffirmed the strict construction requirement without addressing Justice Herbert's concerns:

In *Robert V. Clapp Co. v. Fox* (1931), 124 Ohio St. 331, 178 N.E. 586, paragraph one of the syllabus, this court held: "Mechanics' lien statutes create rights in derogation of the common law and should therefore be strictly construed as to question whether a lien attaches, **1031 but their procedural and remedial provisions should be liberally construed, after the lien has been created." See, also, *C.C. Constance & Sons v. Lay* (1930), 122 Ohio St. 468, 469, 172 N.E. 283, 283 (The statutory steps to establish a mechanic's lien must be followed, "and in that respect the law is strictly construed and applied.").

*Crock Constr. Co. v. Stanley Miller Const. Co.*, 66 Ohio St.3d 588, 592, 613 N.E.2d 1027, 1030–31 (1993).

**{¶37}** The language compelling strict construction is clear, but the decision of the Sixth District Court of Appeals preserves uncertainty regarding application of the rule. The Sixth District reviewed several cases it characterized as applying a strict construction and others applying a liberal construction and held that an obvious error regarding the year the work was performed did not invalidate the affidavit:

Here, appellant's affidavit set forth all of the information required by R.C. 1311.06, although there was a clerical error with the year that the work

was performed. The affidavit was signed by appellant's president on February 10, 2012, and was filed on February 17, 2012, yet the dates when the work was first and last performed were set forth as May 6, 2012 and December 15, 2012. Clearly, the work could not have been performed and completed after the affidavit was signed and filed. There was no dispute about when the work was performed. Given that R.C. 1311.22 provides that substantial compliance with the mechanic's lien statutes is sufficient for a valid lien and it is evident that appellant's affidavit is in substantial compliance with the requirements of R.C. 1311.06, we find that appellant's mechanic's lien is valid.

*Burroughs Framing Specialists, Inc. v. 505 W. Main St., L.L.C.*, 6th Dist. No. OT-14-001, 2014-Ohio-3961, 18 N.E.3d 1253, ¶ 31.

**{¶38}** The Second District Court of Appeals found that *Burroughs* "directly conflicts with the decisions of this Court" and concluded that an error in the date that the last work was completed could not be corrected by a later affidavit. *SRS Distrib., Inc. v. Axis All., LLC,* 2nd Dist. No. 28607, 2020-Ohio-1529, 153 N.E.3d 953, appeal not allowed sub nom. *SRS Distrib., Inc. v. Axis All.*, L.L.C., 159 Ohio St.3d 1476, 2020-Ohio-4045, 150 N.E.3d 967, ¶ 21-24.

**{¶39}** The cases cited by *Burroughs* highlight confusion or recalcitrance regarding the application of a strict construction analysis of compliance with R.C. 1311.06 in the context of the precedent and Revised Code Sections that permit substantial compliance. Nevertheless, we are unable to ignore the mandate issued by the Supreme Court of Ohio

regarding strict construction of the requirements and will endeavor to restrict our analysis to the plain language of R.C. 1311.06 to determine the validity of Zara's mechanic's lien.

**AMOUNT OF LIEN**

{¶40} Zara Construction filed a lien with a specific amount and later filed what it described as an amended lien with a different, lower amount. The trial court found that "Plaintiffs attempt to amend its affidavit to state a revised amount due of $114,632.30 is prima facie evidence that affiant knowingly attested to an incorrect amount in its original affidavit, thus rendering it invalid." In support of the trial court, the Belcastros cite to *Busy Bee Restoration, Inc. v. A-A Blue Print Co.* Summit C.P. No. CV 2013063056, 2014 Ohio Misc. LEXIS 24449 but that case is factually distinguishable and the holding insufficiently broad to apply to this case.  In *Busy Bee*, the lienholder attempted to file a lien "to secure payment for services that have not been rendered." *Busy Bee* at *33.  Because R.C. 1311.06 permits liens only for "labor or work or furnished any material to the improvement giving rise to the claimant's lien" the lien in *Busy Bee* was invalid regardless of the amount, so that holding is not instructive.

{¶41}  Revised Code 1311.06 requires that a potential lien claimant make and file "an affidavit showing the amount due over and above all legal setoffs." The statute contains no requirement that the amount be agreed upon by the parties, nor does it contain any instruction or limitations regarding how the amount may be calculated.  A dispute over the amount due is not unexpected and may be a part of every case involving a mechanic's lien, but we do not agree that dispute serves to invalidate the lien.

{¶42}  In *Warne v. Bamfield*, 5th Dist. Guernsey No. 2005-CA-33, 2006-Ohio-850, ¶ 19, we found that a lien was still valid and sufficiently explicit when the lienholder "did

not estimate the value of the credits and setoffs". In that case, as in the case now before us, "[t]he value of the [appellant's] work and [appellee's] credits and setoffs" were in dispute. The amount described in the lien in *Warne* was higher than the amount admitted as due during trial. We acknowledge that the amounts involved in the case before us differs significantly from the amounts in *Warne*, but as the principals are the same, we find that we must reach the same conclusion in this case. *Accord In re Qualstan Corp., 303 B.R. 149, 156–57* ("NCB cites to no authority which would invalidate a lien of asserting a smaller amount than what is actually owed. * * * This Court will not invalidate the lien of Conie or question its veracity because it stated a smaller amount."); *Regency Centre Dev. Co. v. Constr. Dimensions, Inc.*, 8th Dist. Cuyahoga No. 81171, 2003-Ohio-5067, ¶ 64 ( "That the amount of a lien is undetermined does not mean the lien is invalid, no more than the fact that the amount stated in an affidavit is in excess of the correct amount would render an affidavit invalid."); *Tucker Construction, Inc. v. Kitchen* (March 1, 1995), Summit App. No. 16636, *3 ("On the contrary, the Ohio Supreme Court has held that a mechanic's lien in an amount in excess of the actual amount due is not, for that reason, rendered invalid.") *Thompson Thrift Construction v. Lynn*, 5th Dist. No. 16 CAE 10 0044, 2017-Ohio-1530, 89 N.E.3d 249, ¶¶ 78-79 ("Courts have held that a lien is not invalidated if the stated amount is incorrect when the lienholder testifies to the amount of the lien."); *Thomas v. Huesman,* 10 Ohio St. 152, 158–59 (1859) ("The fact of the amount claimed to remain due upon the account being stated at $951.05, when in fact there appears to have been only $891.53, very obviously can be no objection to the goodness of the account to secure a lien for the amount actually due. That the greater includes the less is a conclusive answer to this objection.")

**{¶43}** We find that Zara included an amount due in compliance with R. C. 1311.06 and the fact that amount was later lowered by the sworn testimony of the lienholder does not serve to invalidate Zara's lien.

## COMPUTATION OF AMOUNT DUE

**{¶44}** The trial court attacks the computation of the amount due as well, contending that the statement in the affidavit that the amount was calculated per the contract was not true and that falsehood invalidates the affidavit.

**{¶45}** As we have noted, the affidavit need only show the amount due over and above all legal set offs. Revised Code 1311.06 contains no requirement that the affiant describe how the amount was calculated and we find that the inclusion of such language is surplusage and does not serve to invalidate the lien. We acknowledge that this issue may have an impact on the calculation of the amount due, credits owed or other financial issues, but we do not agree that it will serve to invalidate the lien. Zara's lien must arise from an express or implied contract, but R.C. 1311.06 does not require that Zara describe the source of the lien within the affidavit creating the lien.

**{¶46}** The trial court limits its analysis of the source of the mechanic's lien to the written contract, but Zara has claimed compensation under implied contracts through the theories of unjust enrichment and quantum meruit. We have held that "[a] subcontractor can file a mechanic's lien to secure payment for work or labor or material in furtherance of any improvement undertaken by virtue of a contract, express or implied. R.C. 1311.02." *Thompson Thrift Construction v. Lynn*, 5th Dist. No. 16 CAE 10 0044, 2017-Ohio-1530, 89 N.E.3d 249, ¶ 65.

**{¶47}** Zara may rely on work performed pursuant to an express or implied contract to calculate its lien, and Chapter 1311 does not impose a requirement upon a lienholder to calculate a lien pursuant to the terms of a written contract to create a lien that satisfies the elements of R.C. 1311.06.

**{¶48}** The trial court's reliance upon the assertion that the claims were brought pursuant to the contract with the homeowners and its implication that the lien must be based upon labor and materials provided pursuant to a written, express contract is erroneous as the Revised Code contains no such requirement.

### LAST DAY OF WORK

**{¶49}** Zara was obligated to state in its affidavit "the first and last dates that the lien claimant performed any labor or work or furnished any material to the improvement giving rise to the claimant's lien" and that affidavit must be recorded within sixty days of the last day the lien claimant performed work or furnished material to establish a valid lien. (R.C. 1311.06) Zara's first affidavit states that the last date of work was April 9, 2019. The trial court found that "Plaintiff failed to meet its burden of proof by a preponderance of the evidence that the last day of work performed on the Belcastro home was April 9, 2019." (Judgment Entry, April 21, 2020, p. 6).

**{¶50}** The trial court's reference to a preponderance of the evidence "was an improper standard for the trial court to use because this requires a higher degree of proof and consideration of the weight of the evidence which is improper in addressing a motion for directed verdict." (Citations omitted.) *Lorenz v. Young*, 5th Dist. Tuscarawas No. 2005 AP 06 0046, 2005-Ohio-6190, ¶ 28. Instead, the trial court was required to construe the evidence most strongly in favor of Zara and, before granting a directed verdict, conclude

that reasonable minds could only reach one conclusion upon the evidence submitted and that conclusion was adverse to Zara.

{¶51} The trial court contends that the last day of work was revealed by Stephen Marek who testified:

Q. In fact, after that framing inspection, no other work was performed by Zara Construction. Correct?

A. I think that's true.

Q. Right. So Zara's last day of work was March 29th, 2019, when that framing inspection was completed. Right?

A. That's probably true.

Transcript, p. 455, lines 6-11.

{¶52} However, Marek later testified on redirect that Zara was still working on the project on April 9, 2019:

Q. So you indicated something about March 29th, 2019, the last day of work on site. Up until April 9th, 2019, or between that time frame, March 29, 2019, and April 9, 2019, do you have knowledge as to what Joe was doing in furtherance of the project from his office?

A. Okay. Between -- I'm sorry. Give me the dates again.

Q. March 29, 2019, and April 9, 2019. April 9th was the date of the termination letter.

Q. Do you know what Zara was doing from his office in furtherance of trying to make progress on the project?

A. I think he was still looking for -- yeah, to continue on soliciting subcontractor bids, yeah.

Q. Okay. So he was still -- was he still working in furtherance of the project?

A. I believe so, yes.

Trial Transcript, p. 478, line 18 to p. 479, line 8.

**{¶53}** Joseph Zara also confirmed that he was working toward completion of the home until April 9, 2019:

Q. That's all I wanted to ask you about that. Let's talk about these liens for a minute. Up until the time of April 9th, 2019, when you received the notice of termination, whether you were on site or off site, as a company, were you still working on the project?

A. Yes. We worked on the site, but yes.

Q. Okay. So, like, what kind of activities would you be doing between, like, the end of March and April 9th?

A. Retrieval and searching for documents, paperwork that was being requested.

Q. Would you be working with your subs to get them going?

A. Yes.

Q. Before you got this notice of termination, are you trying to continue to purchase material, serve the customer, coordinate with your subs?

A. Yes, absolutely. We did not stop working towards fulfilling the contract and finishing that house until termination.

Trial Transcript, p. 348, line 10 to p. 349, line 2.

**{¶54}** Revised Code 1311.06 contains no requirement that the labor or work in furtherance of the project occur at the construction site, but only that the affidavit contain the last date of work performed. We find that Zara satisfied that requirement and that the record contains evidence that April 9th was the last date work was performed in furtherance of the project sufficient to withstand the motion for directed verdict.

**{¶55}** Finally, we note that the trial court included a finding in its judgment entry that creates confusion regarding its decision with regard to the last date of work requirement of R.C. 1311.06. Though the trial court concluded that Zara failed to establish that April 9th was the last date of work by a preponderance of the evidence, earlier in the entry the trial court found that "the original mechanic's lien was timely filed, but is otherwise invalid and did not attach to the property* * * ." (Judgment Entry, April 21, 2020, p. 4). The trial court's conclusion that there was insufficient proof of the last date of work suggests that it found that the lien was not timely filed, but that ruling would conflict with its prior statement. Because we have found that the record contains sufficient evidence to establish that April 9th was the last day of work, at least in the context of a motion for directed verdict, this conflict is of no consequence to our decision but may play a role in any future analysis.

**{¶56}** After a review of the record, we find sufficient evidence to support a conclusion that Zara's first affidavit satisfied the requirements of R.C. 1311.06. The parties conceded that this affidavit was filed timely and the Belcastros do not contend that it failed to contain a description of the property to be charged with the lien; the name and address of the person to or for whom the labor or work was performed or material was furnished; the name of the owner, part owner, or lessee, if known; and the name and

address of the lien claimant. We find that the affidavit contained a valid statement of the amount due over and above all legal setoffs and that assertion was not invalidated by a failure to describe the underlying calculations that produced that number. Further, we find that the face of the affidavit does not show that it was filed outside the sixty-day statutory time period allowed for perfecting a mechanics lien and that the filing of an amended lien does not invalidate the initial lien as the first lien contains all of the required information.

{¶57} We recognize that the material assertions of the affidavit are contested by the parties, but we find that the information presented by Zara at trial regarding the lien were sufficient to survive a motion for directed verdict attacking the validity of the lien. We find that "there is substantial competent evidence supporting the position of the nonmoving party and reasonable minds might reach different conclusions" so we find that the trial court's grant of a directed verdict on this issue was in error. *Hawkins v. Ivy*, 50 Ohio St.2d 114, 115, 363 N.E.2d 367 (1977).

{¶58} Zara's first assignment of error is well taken and granted.

**II.**

**QUANTUM MERUIT/UNJUST ENRICHMENT**

{¶59} In its second assignment of error, Zara claims the trial court improperly granted a directed verdict the Belcastro on the claims of unjust enrichment and quantum meruit.

{¶60} Unjust enrichment and quantum meruit are doctrines "derived from the natural law of equity" and share the same essential elements. *Maghie & Savage, Inc.* v. P.J. Dick, Inc., 10th Dist. No. 08AP–487, 2009-Ohio-2164, 2009 WL 1263965, ¶ 33. A

party seeking relief under either doctrine must show: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *A N Bros. Corp. v. Total Quality Logistics, L.L.C.*, 12th Dist. No. CA2015-02-021, 2016-Ohio-549, 59 N.E.3d 758, ¶ 42.

{¶61} "The doctrines differ with respect to the calculation of damages—damages for unjust enrichment are 'the amount the defendant benefited,' while damages for quantum meruit are 'the measure of the **1040 value of the plaintiff's services, less any damages suffered by the other party.' *U.S. Health Practices, Inc. v. Byron Blake, M.D., Inc.* (Mar. 22, 2001), 10th Dist. No. 00AP–1002, 2001 WL 277291." *Meyer v. Chieffo*, 10th Dist. No. 10AP-683, 193 Ohio App.3d 51, 2011-Ohio-1670, 950 N.E.2d 1027, ¶ 37.

{¶62} In the absence of fraud, illegality, or bad faith, however, a plaintiff may not recover in quantum meruit when an express contract governs the parties' obligations. *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989). Likewise, when competent parties contract, and no fraud or illegality is involved, unjust enrichment cannot be claimed. *Ullmann v. May,* 147 Ohio St. 468, 476, 72 N.E.2d 63 (1947). "The law does not recognize the coexistence of a quasi contract and an express contract covering the same subject." *Williams v. Goodyear Aircraft Corp.*, 84 Ohio App. 113, 117, 85 N.E.2d 601, 604 (9th Dist.1948).

{¶63} The written contract between Zara and the Belcastros called for payments to be made "on the basis of an application for payment submitted to the order by the contractor as the work progresses." (Defendants Exhibit A, contract, page 1, paragraph three). The contract provided that those payments were to be made as follows "1/4 at

Contract Initiation, 1/4 at Framing Dry In, 1/4 at Finished Drywall, ¼ at Finish Final with Final Approved Inspection Occupancy Permit Issuance." (*Id.* at page 1, paragraph two). In the case before us, it is uncontested that the second progress payment had been made in response to an application by Zara and that Zara had begun work for the next stage of construction. Prior to completion the relationship between the parties degenerated to the point that the Belcastros decided to terminate the contract pursuant to paragraph 14(b) of the contract.  The Belcastros delivered a notice of termination to Zara and, shortly thereafter, Zara ceased all work on the project.

**{¶64}** Zara claims it provided materials and labor toward the completion of the project after the second progress payment for which it has not been paid. Zara claims it pursued an action under quantum meruit or unjust enrichment because the written contract terms do not address how the contractor may recover payment for work done in between progress payments when the owner terminates the contract. The Belcastros did not contend the work was not completed, but only that no payment was owed as the written contract provides a solution.

**{¶65}** The trial court granted a directed verdict to the Belcastros on this claim based upon its reading of paragraph 14(b) of the contract. The trial court claimed that provision was unambiguous and provided a solution to the current factual situation. That section states:

> Owner's Termination. The owner may, on one week's notice to the contractor terminate this contract before the termination date hereof, and without prejudice to any other remedy he may have, when the contractor defaults in performance of any provision herein, or fails to carry out the

construction in accordance with the provisions of the contract documents. On such termination the owner may take possession of the worksite and all materials, equipment, tools, and machinery thereon, and finish the work in whatever way he deems expedient. lithe unpaid balance of the contract sum at the time of such termination exceeds the expense of finishing the work, the owner will pay such excess to the contractor. If the expenses of finishing the work exceeds the unpaid balance at the time of termination the contractor agrees to pay the difference to the owner. On such default by the contractor, the owner may elect not to terminate the contract, and in such event he may make good the deficiency in which the default consists, and deduct the costs from the progress payment due to the contactor.

**{¶66}** The trial court's analysis of the issue concludes with the following:

In order to avail itself of the quantum meruit and/or unjust enrichment theories of recovery Plaintiff attempts to argue that the express contract that Plaintiff drafted is silent on what should happen when the contract is terminated by the owner between two payment milestones. The Court finds this theory of relief disingenuous, as paragraph 14 of the contract expressly provides the means to calculate a fair payment under just such a scenario.

Also important to the court's decision is the long accepted tenet in contract interpretation that, if there are ambiguities in a contract, the document will be strictly construed against the party who drafted it or selected its language. Plaintiff Zara Construction, Inc. drafted the contract in dispute in this matter. If Plaintiff finds the contract ambiguous as to the

correct procedure for calculating damages where the owner terminated the contract between payment milestones, it has no one but itself to blame. The Court finds no such ambiguity.

**{¶67}** While the trial court does not specifically cite section (b) of paragraph fourteen of the contract, that is the only section that describes the consequences of a contract terminated by the owner.

**{¶68}** Paragraph 14(b) applies to circumstances where the "contractor defaults in the performance of any provision herein, or fails to carry out construction in accordance with the provisions of the contract documents." The plain language of paragraph 14(b) requires proof of the delivery of the requisite notice and a finding that Zara defaulted before the Belcastros could successfully terminate the contract and complete construction.

**{¶69}** The trial court did not find that Zara was in default or that it breached any part of the contract before it issued a directed verdict. Instead, the Belcastros' allegation that Zara breached the contract was presented to the jury. The jury returned a verdict in favor of Zara finding that it had not breached the contract. These facts lead us to the conclusion that the trial court's holding that paragraph 14(b) of the contract addressed the circumstances presented to it was error, because the record contains no finding that Zara defaulted, an unambiguous requirement of that section of the contract. Further, we hold that the record contains sufficient evidence to present a question to the jury regarding whether Zara was entitled to damages under a theory of either unjust enrichment or quantum meruit as it is uncontested that Zara provided labor and materials after the third

payment for which it has not received payment and the contract contains no express or implied provision addressing compensation for those services or materials.

**{¶70}** Zara's second assignment of error is well taken and granted.

**{¶71}** The decision of the Richland County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.

By: Baldwin, J.

Gwin, P.J. and

Delaney, J. concur.